383 F.2d 230
 127 U.S.App.D.C. 303
 INTERNATIONAL UNION OF ELECTRICAL, RADIO AND MACHINE
WORKERS, AFL-CIO, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent, Scott's Inc.,
Intervenor.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
SCOTT'S, INC., Respondent, International Union of
Electrical, Radio andMachine Workers, AFL-CIO, Intervenor.
 Nos. 20302, 20346.
 United States Court of Appeals District of Columbia Circuit.
 Argued March 1, 1967.
Decided Sept. 6, 1967.
 
 Miss Ruth Weyand, Washington, D.C., for petitioner in No. 20,302 and intervenor in No. 20,346. Miss Marilyn C. Rose also entered an appearance for petitioner in No. 20,302 and intervenor in No. 20,346.
 Messrs. George B. Driesen and Robert A. Giannasi, Attys., N.L.R.B., with Messrs. Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, and Marcel Mallet-Prevost, Asst. Gen. Counsel, N.L.R.B., were on the brief, for petitioner in No. 20,346 and respondent in No. 20,302.
 Messrs. James L. Stokes and Philip F. Wood, Grand Rapids, Mich., of the bar of the Supreme Court of Michigan, pro hac vice, by special leave of court, with whom Mr. Stephen C. Bransdorfer, Grand Rapids, Mich., was on the brief, for respondent in No. 20,346 and intervenor in No. 20,302.
 Before BURGER, WRIGHT and TAMM, Circuit Judges.
 TAMM, Circuit Judge:
 
 
 1
 The International Union of Electrical, Radio and Machine Workers, AFL-CIO, has petitioned this court for review of an order of the National Labor Relations Board issued on June 30, 1966, 159 NLRB No. 146. The order arises out of various charges of unfair labor practices filed by the Union with the Board against Scott's, Inc. No. 20,302 is a petition by the Inion alleging that the Board erred in not giving the full measure of relief requested by the Union. No. 20,346 is the Board's petition for enforcement of its order against respondent employer.
 
 
 2
 The charges of unfair labor practices relate to the Union's attempts, in the early part of March 1964, to organize respondent's employees. The Board, in examining the ensuing trial examiner's report, found that the respondent had engaged in extensive violations of sections 8(a)(1), (2), and (3) of the Act[1] during the course of the respondent's anti-union campaign, including interrogation of employees concerning their interest and activity in the Union, threats of loss of jobs and existing benefits, coercion of employees to signify their opposition to the Union, and promises of benefits for the rejection of the Union. The Board, after due and proper proceedings, adopted the findings, conclusions, and recommendations of the trial examiner with certain additions and modifications; made findings; rendered a decision; and entered a cease and desist order. In so doing, the Board reversed the trial examiner on several of his findings. We are satisfied that where the Board reached a result different from that of the trial examiner[2] such result was proper. Universal Camera Corp. v. N.L.R.B., 340 U.S. 471, 71 S.Ct. 456, 95 L.Ed. 456 (1951).
 
 
 3
 We, upon the whole record, consider significant for purposes of discussion only the remedy proposed by the Board. We need not concern ourselves with the rest of the Board's findings, because they are based on substantial evidence on the record considered as a whole and because the relevant evidence was such that a reasonable mind might accept it as adequate to support the Board's conclusions. Washington, Virginia & Maryland Coach Co. v. N.L.R.B., 301 U.S. 142, 57 S.Ct. 648, 81 L.Ed. 965 (1937); Consolidated Edison Co. of New York v. N.L.R.B., 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1958). While we have considerable reservations as to the findings on the issue relating to the discharges, we cannot say that they are irrational or lacking in some evidentiary support. We therefore affirm as to this issue and all other issues except the remedy, as to which issue some modification is called for.
 
 The Remedy
 
 4
 The remedy which the Board petitions this court to enforce; id est, the requirement of a public reading of the cease and desist order by the employer to the employees on company time, must be re-evaluated in light of its unusual nature. This remedy was not in the proposed order of the trial examiner but was added by the Board. We are well aware of the remedial aspects of the remedies as required by the Act and of the Board's duty, broad discretion, and expertise in fashioning remedies in individual cases.[3] The remedies fixed by the Board derive from a long history of bad relations between the Union and the company. Company attitudes were reflected in speeches critical of the Union. The Board found the company exceeded permissible bounds and found an unfair labor practice in the speeches. Amongst the approved remedies are the requirements that the employer mail to each employee the notice which informs the employee of his statutory right to be free from coercion, interference, and restraint, and to post copies of this same notice.[4] The Board would also have us enforce yet a fourth promulgation of the order by having the employer read to groups of employees, convened during working hours, a copy of this same notice which has been posted and mailed. We reject this as being inappropriate to achieve the sought-after goal of dissemination of information concerning employees' rights.[5] We recognize the broad scope of discretion Congress has given the Board in fashioning remedies; however, that discretion is not without limits. Local 57, International Ladies' Garment Workers Union v. N.L.R.B. (Garwin Corp. v. N.L.R.B.), 126 U.S.App.D.C. 81, 374 F.2d 295 (1967), cert. denied, 387 U.S. 942, 87 S.Ct. 2078, 18 L.Ed.2d 1328 (U.S. June 6, 1967). The public reading by the employer of the order would, further, be humiliating and degrading to the employer[6] and undoubtedly would have a lingering effect on future relations between the company and the Union. It could as well have an impact on the atmosphere, not only at the time of the reading, but in the future, for peaceful, fruitful, and effective labor bargaining. It is conceivable that some conduct on the part of an employer or a union might reach such extreme dimensions as to justify the novel and drastic step of requiring the offending party to stand up before the employees and read the Board's notice publicly, but we cannot close our eyes to the reality that such a course would inevitably poison the future relations between company and union and be a source of continuing resentment. The ignominy of a forced public reading and a 'confession of sins' by any employer, any employee, or any union representative makes such a remedy incompatible with the democratic principles of the dignity of man.
 
 
 5
 In No. 20,302 the Board's ofder, with the exception of the reading of the cease and desist order by the company to the employees, is affirmed.
 
 
 6
 In No. 20,346, the Board's order, with the exception of the reading of the cease and desist order by the company to the employees, is enforced.
 
 
 7
 J. SKELLY WRIGHT, Circuit Judge (concurring in part and dissenting in part):
 
 
 8
 I agree with the majority insofar as it upholds the Board's findings that the employer engaged in extensive violations of employee rights under the National Labor Relations Act, and insofar as it enforces the remedies worked out by the Board to overcome the adverse effects of these violations.[1] I cannot agree, however, that requiring the employer to read the cease and desist order is 'a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act.' Fibreboard Paper Products Corp. v. N.L.R.B., 379 U.S. 203, 216, 85 S.Ct. 398, 406, 13 L.Ed.2d 233 (1964); Local 57, International Ladies' Garment Workers Union v. N.L.R.B., (Garwin Corp. v. N.L.R.B.), 126 U.S.App.D.C. 81, 374 F.2d 295, 300, cert. denied, 387 U.S. 942, 87 S.Ct. 2078, 18 L.Ed.2d 1328 (1967). Any difficulties such a provision might be thought to create seem to me adequately dissipated by the modification approved by the Second Circuit in J. P. Stevens & Co. v. N.L.R.B., 380 F.2d 292 (1967), in which the company was allowed the alternative of having a Board representative read the order.
 
 
 9
 I am not persuaded that having a Board official read a Board order which does nothing more than assure the employees that their rights under the NLRA will no longer be violated, as the Board has found they have been heretofore, places the Board's 'imprimatur' on the union and thus makes the Board less than neutral. The fact is that this employer has acted unlawfully and adequate remedies are needed to restore the balance.[2] If it is thought that a court's modification of the Board's order 'would run counter to the premise that remedies should be worked out by those having the most experience and expertise in the area,' then the appropriate course would be to remand this part of the order to the Board for its further consideration in light of J. P. Stevens rather than to reject it absolutely.[3]
 
 
 
 [1]
 29 U.S.C. 158(a)(1), (2), (3) (1964)
 
 
 [2]
 The Board may, of course, reject findings of the trial examiner, and ordinarily this prerogative will not be disturbed on judicial review. Wheeler v. N.L.R.B., 114 U.S.App.D.C. 255, 314 F.2d 260 (1963)
 
 
 [3]
 When the Board finds an unfair labor practice to have been committed, section 10(c) of the Act authorizes it 'to take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies of this Act.' This power, as has been recently emphasized, is a 'broad discretionary one subject to limited review,' and its exercise is not to be disturbed 'unless it can be shown that the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act.' Local 57, International Ladies' Garment Workers Union v. N.L.R.B. (Garwin Corp. v. N.L.R.B.), 126 U.S.App.D.C. 81, 374 F.2d 295 (1967), cert. denied, 387 U.S. 942, 87 S.Ct. 2078, 18 L.Ed.2d 1328 (U.S. June 6, 1967)
 
 
 [4]
 The Board's order also required the company to give access for one hour on company time and at company expense to the Union to allow it to give a presentation of the Union position. The granting of such a remedy is of course unusual, and as the court said in N.L.R.B. v. H. W. Elson Bottling Co., 379 F.2d 223, decided June 27, 1967, Sixth Circuit, is 'fairly strong medicine.' The aggravated circumstances there mentioned but not present are found here; therefore, such a remedy is approved
 
 
 [5]
 This same remedy was before the court in N.L.R.B. v. Laney and Duke Storage Co., 369 F.2d 859 (5th Cir. 1966) and was there rejected. The court said, at page 869: 'The requirement of the Recommended Order that the Notice be read by management to any employee who requests it, as amended by the Board to require it to be read to each employee, singly or collectively, is unnecessarily embarrassing and humiliating to management rather than effectuating the policies of the Act.'
 Recently, this same remedy was before the Second Circuit in the J. P. Stevens case. (J. P. Stevens and Co. v. N.L.R.B., 380 F.2d 292, decided July 7, 1967.) While recognizing the humiliating aspect of such a forced reading, that Circuit attempted to alleviate the indignity by giving the company the choice of reading the notice or having a representative of the Board read it to the employees. This procedure, however, creates a problem more severe than the one it supposedly solves. The practical effect of the exercise of the option is to put the imprimatur of the Board on both a particular union's activities, as well as on union activities in general, by having a representative of the Board read a notice resulting from unfair labor practices which arose because of, and from, company activity in opposition to a union's organizational activities. It follows, then, that the Board is in the position of not being completely neutral, although that is the position which the Board is legally duty bound to take. Further, we would not, sua sponte, offer as an alternative to the employer a choice between a company or a Board representative giving the public reading; such a de novo remedy would run counter to the premise that remedies should be worked out by those having the most experience and expertise in the area. Our review function may in a rare case as here require us to forbid a particular remedy as illegal, arbitrary, or capricious, but it does not authorize us to prescribe a remedy as the Second Circuit has done. (It should be noted that in the Garwin case, supra, note 3, this court suggested areas of remedies which might properly be considered by the Board, but we did not presume to prescribe a remedy.) Secondly, the clear import of the alternative's exercise would be to put the Board on the horns of a dilemma; for, if the employer elects not to read the notice, the Board must appear, through a representative, and create an appearance of sanctioning one particular union. Further, in this case the record establishes that the original election was postponed indefinitely, and those cases requiring that so-called laboratory conditions be maintained during the pendency of an election clearly apply in this case. In N.L.R.B. v. Fresh'nd-Aire Co., 226 F.2d 737 (7th Cir. 1955), the Board itself set aside an election where, prior to the election, a field examiner of the Board had appeared at an organization meeting of the union and had played a piano at a union social gathering. Board involvement in a reading of the order would inescapably draw the Board into the very conflict areas it should remain aloof from, except for the need to judge. Moreover, that role is an activity which would, by the Board's standards, vitiate the pending election. We do not accept the argument that because of the employer's own activities he finds himself in a position of making a choice and therefore cannot complain about the impact. Labor relations is not a game of Russian roulette.
 
 
 [6]
 The court in the Laney and Duke case did not, nor need we now, go on to the problems which would arise if such a remedy were allowed. Traditionally the courts have been reluctant to grant remedies, the essential nature of which is a personal act and where the problems of enforcement and interpretation are considerable
 
 
 [1]
 This includes the approval of the order to grant the union access to company property, for the reasons noted in Note 4 of the majority opinion
 
 
 [2]
 see Bok, The regulation of Campaign Tactics in Representation Elections Under the National Labor Relations Act, 78 Harv.L.Rev. 38, 124-141 (1964); Ross, Analysis of Administrative Process Under Taft Hartley, 63 LAB.REL.REP. 132, 153 (BNA 1966); Note, The Need for Creative Orders Under Section 10(e) of the National Labor relations Act, 112 U.PA.L.REV. 69, 81-83, 90-94 (1963)
 
 
 [3]
 It should be noted that, after analyzing unfair labor practice cases over a fiveyear period, Professor Philip Ross of the University of Pittsburgh's Graduate School of Business recommended as one important method of expunging 'the effects of the unfair labor practices and (restoring) the parties as much as possible to their positions prior to the violation' the remedy approved in J. P. Stevens. Ross, supra Note 2