852 F.2d 1344
 128 L.R.R.M. (BNA) 3190, 271 U.S.App.D.C. 377,
109 Lab.Cas. P 10,648
 UNITED FOOD AND COMMERCIAL WORKERS INTERNATIONAL UNION,
AFL-CIO, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent,
Monfort of Colorado, Inc., Intervenor.
NATIONAL LABOR RELATIONS BOARD, Petitioner
v.
MONFORT OF COLORADO, Inc., Respondent
United Food and Commercial Workers International Union,
AFL-CIO, Intervenor.
 Nos. 87-1457, 87-1574.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued May 19, 1988.
Decided Aug. 2, 1988.
As Amended Oct. 12, 1988.
 
 Peggy Hillman, with whom George R. Murphy, Washington, D.C., was on the brief, for petitioner.
 Beverly A. Oyama, Atty., N.L.R.B., with whom, Robert E. Allen, Associate Gen. Counsel, Aileen A. Armstrong, Deputy Associate Gen. Counsel, and Barbara A. Atkin, Atty., N.L.R.B., Washington, D.C., were on the brief, for respondent.
 Charles E. Sykes, for respondent/intervenor, Monfort of Colorado, Inc.
 Before WALD, Chief Judge, MIKVA and BUCKLEY, Circuit Judges.
 Opinion for the Court filed by Circuit Judge MIKVA.
 MIKVA, Circuit Judge:
 
 
 1
 The petitioner, the United Food and Commercial Workers International Union, AFL-CIO ("the Union"), seeks review of an order of the National Labor Relations Board ("the Board") issued against the intervenor, Monfort of Colorado, Inc. ("Monfort"). The Union contends that the Board abused its discretion when it reversed the Administrative Law Judge ("ALJ") on some of the remedies that he imposed against Monfort for violations of the National Labor Relations Act ("Act"). We affirm the Board's decision as within the broad discretion accorded it in fashioning remedies. United Steelworkers of America v. N.L.R.B., 646 F.2d 616, 629 (D.C.Cir.1981).
 
 
 2
 Respondent/intervenor Monfort also challenges the Board's order. It contends that the Board abused its discretion by imposing one particular remedy: an order that Kenneth Monfort, Monfort's president and owner at the time of the violations, personally read a notice prepared by the Board to assembled employees. Because the record indicates that Kenneth Monfort had "pervasive personal involvement" in the company's violations of the Act, we hold that the Board did not abuse its discretion when it issued the reading order. Conair Corporation v. N.L.R.B., 721 F.2d 1355, 1386 (D.C.Cir.1983).
 
 
 3
 We enforce the Board's order as entered by it.
 
 I. BACKGROUND
 
 4
 The labor law violations at issue in this case arise out of an organizing drive conducted at Monfort's meatpacking plant in Grand Island, Nebraska. Before the election at issue in this case was held, the Board had found that Monfort had improperly assisted and entered into a collective bargaining agreement with a different union, the National Maritime Union NMU, in violation of the Act. The Ninth Circuit affirmed this decision, and issued a cease and desist order to Monfort not to engage in further behavior of this kind. Indus. Technical and Prof. Employees Div. v. N.L.R.B., 683 F.2d 305 (9th Cir.1982). Pursuant to a Board order, a representation election was held at the plant on October 9, 1981. A majority of employees voting in the election opposed unionization.
 
 
 5
 Both the Union and the NMU filed objections to the October 1981 election. They charged that Monfort had engaged in numerous actions during the course of the election that violated the Act. The ALJ ruled in favor of the Union. He found that Monfort had indeed acted unlawfully during the course of the election. The violations found by the ALJ include a wide variety of activities. He found that supervisors at the plant had threatened to refuse to promote employees because of pro-union activity; threatened employees that they would be "on the unemployment line" if the union won; told employees that there would be a strike if the Union were selected; told employees that the plant would be closed if the Union were victorious; and threatened employees that their bonuses would be delayed until after Christmas or lost entirely if the Union were selected. The ALJ also found that Monfort once again gave the NMU preferential access to the plant for campaign purposes, and that it discharged two employees for pro-union activities in violation of the Act. In addition, the ALJ found that Kenneth Monfort had personally engaged in illegal and coercive anti-union activity during the course of the election. The ALJ found that Kenneth Monfort gave several speeches to assembled employees in the days before the election in which he stated that if the Union prevailed the employees' bonuses would be delayed for some time; that Monfort threatened employees on several occasions that he might have to close the plant if the Union won the election; that Monfort promised to visit the plant once a month to hear employee grievances if the Union were voted down; and that after the election Monfort made an unduly coercive speech announcing the retention of the bonus.
 
 
 6
 The ALJ imposed a wide range of remedies to correct the violations he found. For the purposes of this appeal, the remedies imposed by the ALJ can be divided into three distinct categories. The first category of remedies was a requirement that Monfort cease and desist from fifteen kinds of illegal and coercive acts, which had the effect of restraining employees in the exercise of their rights under the Act. This cease and desist section of the order was fully upheld by the Board. The second category of remedies includes those affirmative remedies that the Board, in reviewing the ALJ's decision, also fully upheld. These included rehiring two dismissed workers, making up certain wage increases illegally withheld, and preserving certain records for the Board. The category also included a requirement that the Company mail a particular notice prepared by the Board to every worker at his or her home, that it post the same notice at the plant and publish it in a local newspaper of general circulation, and that Kenneth Monfort read the notice to assemblies including all employees of the plant during working time.
 
 
 7
 The final category of remedies imposed by the ALJ includes those affirmative remedies imposed by the ALJ that the Board labeled "extraordinary access measures" and declined to include in its order. This category includes the ALJ's order to the company to make available to the Union a list of names and addresses of all employees, to grant the Union reasonable access to plant bulletin boards, to permit Union representatives reasonable access to nonwork areas of the plant to speak to workers about unionization, to give the Union notice before any supervisor speaks to the employees about unionization and permit the Union's representatives to be present and to speak as well, and to permit Union representatives an opportunity to deliver a 30-minute speech to the workers on work time before a Board-scheduled election at the plant. Even in the ALJ's original decision, this final set of remedies came with a specific limitation attached: that they would be valid only for two years and only so long as "the Regional Director has not issued an appropriate certification following a free and fair election." The Board declined to include this group of remedies in its decision at all, however, because of the weight it accorded an election held at the plant after the ALJ's decision was issued.
 
 
 8
 The ALJ issued his decision on April 29, 1985. Prior thereto, on May 19, 1984, a second election occurred at the plant. The Union lost this election, but it filed objections with the Board. The Board found violations by Monfort and set the election aside. On July 19, 1985, a third election was held at the plant. Once again, a majority of the employees voting opposed unionization. No objections were filed to that election, and the Board certified its results on August 5, 1985.
 
 
 9
 In a July 28, 1987 decision, the Board agreed with the ALJ's determination that Monfort had violated the Act by engaging in illegal anti-union activities during the election campaign. The Board issued an order that imposed all of the cease and desist remedies imposed by the ALJ, and most of the affirmative remedies as well. The Board held, however, that because the July 1985 election was not objected to as unfair by any party, it would not impose upon Monfort the third category of remedies from the ALJ's order--those that the Board had labeled "extraordinary access remedies." It issued an order affirming the ALJ's findings of violations, and imposing the more limited set of remedies.
 
 
 10
 Both the Union and Monfort appeal from the Board's decision. The Union contends that the Board erred in not imposing all of the remedies included in the ALJ's decision. In particular, it disputes the Board's reliance upon the July 1985 election in its decision. It maintains that it chose for strategic reasons not to challenge that election, but that it nevertheless was not fair and should not be the basis for failing to impose extraordinary access remedies. Monfort challenges only the Board's requirement that Kenneth Monfort personally read the Board's notice to assembled employees.
 
 II. DISCUSSION
 
 11
 The discretion accorded the Board in tailoring remedies for violations of the Act is very broad. The Act authorizes the Board to issue orders to violators "to cease and desist from such unfair labor practice, and to take such affirmative action including reinstatement ... as will effectuate the policies of the Act." 29 U.S.C. Sec. 160(c) (1976). This court has stated that "the imposition of remedies is a matter of special administrative competence, subject to very limited judicial review." United Steelworkers of America v. N.L.R.B., 646 F.2d 616, 629 (D.C.Cir.1981). The Board's decision as to remedies must be upheld " 'unless it can be shown that the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act.' " Id. (quoting Virginia Electric & Power Co. v. N.L.R.B., 319 U.S. 533, 540, 63 S.Ct. 1214, 1218, 87 L.Ed. 1568 (1943)).
 
 
 12
 Nevertheless, although the Board's discretion is broad, it is still necessary that its decisions rise above arbitrariness. It is also necessary that its decision be supported by substantial evidence, United Food and Commercial Workers Intern. Union v. N.L.R.B., 768 F.2d 1463, 1469 (D.C.Cir.1985), and that they be in accord with announced policies and procedures. Hall-Brooke Hospital v. N.L.R.B., 645 F.2d 158, 160 (2d Cir.1981). Because we find that the Board's decision met these criteria, we affirm its order.
 
 A. Notice and Access Remedies
 
 13
 The Board order at issue in this case imposes several special notice and access remedies. It requires Monfort to mail a Board notice to employees and publish it in a local newspaper, and it orders Kenneth Monfort personally to read the notice to assembled employees. The Union contends, however, that the Board abused its discretion in issuing this order because it did not do more. The Union maintains that the Board erred in not including in its order the four additional remedies that the ALJ's order had imposed. It argues that the record of violations by Monfort enumerated in the ALJ's decision supports his imposition of these additional remedies, and that the Board's order removing these remedies constitutes an abuse of discretion because the Board adduced "no principled reason for such reversal ..." Local 777 Democratic Union Organizing Committee v. N.L.R.B., 603 F.2d 862, 882 (D.C.Cir.1978).
 
 
 14
 Concededly, the Board's four-page decision does not explain its reasoning in painstaking detail. Neither, however, does it "cross the line from the tolerably terse to the intolerably mute." Greater Boston Television Corporation v. F.C.C., 444 F.2d 841, 852 (D.C.Cir.1970). The Board states in its decision that it scaled back on the special access remedies ordered by the ALJ because circumstances had changed since the ALJ issued his decision. It relied on the fact that in the July 1985 election a majority of the voters opposed unionization, and the fact that this election was not objected to as unfair by any party. It concluded that "[i]n these circumstances, we cannot justify the extraordinary access remedies" that it ordered removed. United Food and Commercial Workers v. Monfort, 284 N.L.R.B. No. 143 (July 28, 1987) at 4.
 
 
 15
 The Union contests the Board's reliance upon the July 1985 election as a basis for removing the extraordinary access remedies that it did. It maintains that the mere fact that no party filed objections to the election does not by itself mean that the election was fair. The Union states that it had tactical reasons for not objecting to the election, and that the Board erred in assuming based on the absence of objections that the actual election was fair. We cannot agree that the Board did not have the authority to take into account the results of the certified election as it did. The results of the July 1985 election were certified as valid by the Regional Director of the Board in accordance with Board rules, and the certification stated that a majority of the valid ballots had not been cast for any union. An election supervised by the Department of Labor "enjoys a presumption of fairness and regularity." Donovan v. Blasters, Drillrunners & Miners, 521 F.Supp. 595, 598 (S.D.N.Y.1981). The Union did not upset that presumption prior to certification by filing timely objections. At this late stage, the Union attempts to argue that the Board abused its discretion in taking into account the results of the election in its determination. In light of our traditional deference to the Board's "special administrative competence" in the selection of remedies, United Steelworkers, 646 F.2d at 629, we are unable to say that the Board abused its discretion by according the July 1985 election the weight it did in fashioning its remedies.
 
 B. The Reading Order
 
 16
 Intervenor Monfort contends that the Board erred in ordering Kenneth Monfort personally to read the Board's notice to assembled employees because such a reading is punitive in nature and does not effectuate the goals of the Act. We are not unconcerned about "[t]he ignominy of a forced public reading" by an employer and its potential for oppression. International Union of Electrical Radio and Machine Workers v. N.L.R.B., 383 F.2d 230, 234 (D.C.Cir.1967). Indeed, we have stated previously that we will not enforce such orders when the record fails to indicate "particularized need" for the order. Teamsters Local 115 v. N.L.R.B., 640 F.2d 392, 403 (D.C.Cir.1981). But in the case at bar we are convinced that the record indicates that such a particularized need does exist and that the reading is necessary "to dispell the atmosphere of intimidation created in large part by [intervenor's] own statements and actions." Conair, 721 F.2d at 1386-87.
 
 
 17
 The Teamsters and Conair cases set the parameters for when a personal reading order like the one at issue in this case will be enforced. In Teamsters, we declined to enforce such an order. In that case, the record did not indicate that substantial links existed between the particular employer ordered to read the notice and the labor law violations committed. We noted that "[o]f all the unfair labor practices found by the Board, the only one personally performed by [the employer] was his promise of benefits as an inducement to avoid the Union." Teamsters, 640 F.2d at 403. In light of the tenuousness of the link, we found that "the lack of particularized need may create the misimpression that the Board is seeking to punish an uncooperative respondent," and concluded that "the hardship [of the order] outweighs the benefit ..." Id., 640 F.2d at 403. In Conair, decided two years later, this court did enforce a personal reading order. We noted in Conair that the record indicated that the employer who was the subject of the order "personally and repeatedly communicated to employees" the threats that were found to be violations of the Act. Conair, 721 F.2d at 1386. Because of this "pervasive personal involvement," we found that the order was justified. Id.
 
 
 18
 Kenneth Monfort's actions more nearly resemble those of the subject of the order in Conair; the record indicates a "pervasive personal involvement" on his part that supports the Board's order. Monfort was involved in a large number of the violations for which the company was cited. He gave several speeches to employees threatening plant closure; he threatened employees with delay or loss of their bonuses on more than one occasion; he promised to visit the plant once a month to listen to employee grievances if they voted down the union; and after the election, he made a speech announcing the retention of the bonus that the ALJ found to be unduly coercive. Monfort's personal involvement with the violations was such that the Board could well have concluded that only a personal reading by him would "dispel the atmosphere of intimidation created in large part by [his] own statements and actions ..." Id. at 1387.
 
 
 19
 National labor law has undergone many changes from the early days of the Wagner Act. Throughout this period, courts have acknowledged the broad remedial discretion that the Board must have to effectuate the policies of the statute. Such discretion makes it difficult to provide bright-line limits on the remedies that the Board can utilize. As the decisions of this court in Teamsters and Conair demonstrate, unique and specific facts of a case will more often than not provide the measure that allows a remedy in one case and precludes it in another. Such are the vagaries of judicial review of the delicate fabric of our national labor law.
 
 The decision of the Board is
 
 20
 Affirmed.