Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

--------

Argued May 11, 2004          Decided June 4, 2004

No. 03-1322

AMERICAN POSTAL WORKERS UNION, AFL–CIO,
ATLANTA METRO AREA LOCAL,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

--------

On Petition for Review of an Order of the
National Labor Relations Board

--------

*James B. Coppess* argued the cause for petitioner. With him on the briefs were *Anton G. Hajjar*, *Lynn K. Rhinehart*, and *Laurence S. Gold*.

*Linda Dreeben*, Assistant General Counsel, National Labor Relations Board, argued the cause for respondent. With her on the brief were *Arthur F. Rosenfeld*, General Counsel, *John H. Ferguson*, Associate General Counsel, *Aileen A. Arm-*

--------

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

*strong*, Deputy Associate General Counsel, and *Julie F. Marcus*, Attorney.

Before: GINSBURG, *Chief Judge*, and SENTELLE and ROBERTS, *Circuit Judges*.

Opinion for the Court filed by *Chief Judge* GINSBURG.

GINSBURG, *Chief Judge*: The American Postal Workers Union petitions for review of an order of the National Labor Relations Board holding the United States Postal Service did not violate § 8(a)(1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), by ejecting two nonemployee union organizers from its Bulk Mail Center in Atlanta, Georgia. Because the Board had a rational basis for its decision, we deny the petition for review.

## I.   Background

One evening in June 2000 three agents of the APWU entered the Postal Service's Bulk Mail Center to solicit drivers employed by Mail Contractors of America (MCOA), a company that hauls mail by truck for the USPS. They were: Hardy, an MCOA driver; Brown, the president of APWU Local 32; and Grimes, an APWU organizer. These three, none of whom was employed by the Postal Service, went to the lounge used by MCOA drivers waiting for Postal Service employees to load mail into their trucks. Brown left the lounge around 10p.m., and at approximately 10:30p.m. Johnson, a Postal Service employee, joined Hardy and Grimes there. Upon discovering the three men attempting to organize MCOA drivers, a Postal Service supervisor, after consulting with a manager, instructed them to leave the Bulk Mail Center, which they did. The supervisor and the manager acted pursuant to the Postal Service's Southeast Area Office Policy. Jack Mitchell, the author of the Policy, testified that it states the intention of the Postal Service "to remain neutral, that this was an effort by the Union to organize a private company that we had no say in, and we were not to aid them nor to hinder them." The Postal

Service also had a general policy predating the Southeast Area Office Policy which prohibited solicitation for commercial or charitable purposes.

The Union filed an unfair labor practice charge, and the General Counsel of the NLRB issued a complaint alleging the Postal Service violated § 8(a)(1) of the NLRA, 8 U.S.C. § 158(a)(1), by "den[ying] its employee Joe Johnson, Mail Contractors of America employee Will Hardy, and Union Organizer Lyle Grimes access to a break room for the purpose of organizing." Section 8(a)(1) of the NLRA makes it "an unfair labor practice for an employer to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7." 29 U.S.C. § 158(a)(1). Section 7 of the NLRA provides that "Employees shall have the right to self-organization, to form, join, or assist labor organizations." 29 U.S.C. § 157. After a hearing, an Administrative Law Judge held the Postal Service had violated § 8(a)(1), as alleged.

On review the Board affirmed the decision of the ALJ with respect to the employee, but held excluding union president Grimes and MCOA driver Hardy from the contract drivers' lounge did not violate § 8(a)(1). In the Board's view, the General Counsel had failed to prove the Southeast Area Office Policy

> prohibited union solicitation while ... permitt[ing] other solicitation.... Without evidence that the [Postal Service] permitted other solicitation by nonemployees, we cannot conclude that the [Postal Service's] Southeast Area Office Policy, or its denial of access to the Union pursuant to that policy, was discriminatorily confined to Section 7 activity.

The Union appeals, arguing the Southeast Area Office Policy on its face discriminates against union solicitation.

## II. Analysis

The applicable standard of review in this case is highly deferential. A Board determination that there has been no violation of the NLRA must be upheld "unless it has no

rational basis in the record." *Laborers' Local Union No. 204 v. NLRB*, 904 F.2d 715, 717 (D.C. Cir. 1990); *see Gen. Elec. Co. v. NLRB*, 117 F.3d 627, 638 (D.C. Cir. 1997).

A.  Jurisdiction

Preliminarily the Board argues the court lacks jurisdiction to entertain the Union's petition for two reasons, both linked to § 10(e) of the Act: "No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances."  29 U.S.C. § 160(e).  First, the Board argues the Union is barred from arguing the Southeast Area Office Policy was facially discriminatory because "that theory was not the theory underlying the General Counsel's complaint." The complaint did not specify whether the alleged violation of § 8(a)(1) was the enforcement of a facially discriminatory rule or the disparate application of a facially neutral rule and, according to the Board, the brief the General Counsel submitted to the ALJ "contained no allegation that the USPS Southeast area office policy was facially discriminatory."  The Union, consulting the same brief, says that the General Counsel did in fact "challenge[ ] the Postal Service's Southeast Area Office Policy as facially discriminatory."  We agree.

Established Board policy forbids a litigant from "expand[ing] the scope of the complaint without the consent of the General Counsel."  *West Virginia Baking Co.*, 299 NLRB 306, 306 n.2 (1990); s*ee* § 3(d), 29 U.S.C. § 153(d) (General Counsel has "final authority" over "issuance of complaints"). Here, however, the General Counsel herself, not the Union, expanded the scope of the argument beyond what was in her rather terse complaint.  Before the ALJ the General Counsel argued in her brief that the Postal Service "violated Section 8(a)(1) of the Act by a blanket prohibition of any Union solicitation and distribution directed to the contract drivers." Therefore, far from barring the Union's argument, the General Counsel's theory of the complaint supports it.

Alternatively, the Board argues the Union "failed to make the facial discrimination argument to the Board, either in

cross-exceptions to the [ALJ's] decision or in a motion for reconsideration." The Union contends it squarely presented the argument to the Board.

Section 10(e) does not deprive the court of jurisdiction if the Union gave the Board "adequate notice" of the argument it seeks to advance on review. *Alwin Mfg. Co., Inc. v. NLRB*, 192 F.3d 133, 143 (D.C. Cir. 1999). That is just what happened in this case. The Postal Service excepted to the ALJ's "conclusion that the credited evidence shows that [the Postal Service] evicted the organizers because [it] had a policy against the Union engaging in organizing activities in that area." In response, the Union argued the Postal Service had a "blanket policy forbidding union organizing," which "policy addressing only union organizing and forbidding it by anyone in any place on the Postal Service's property" violated § 8(a)(1). Of course, the Union also could have sought reconsideration of the Board's decision, but it is not out of court for want of having done so, because the Board had before it the precise issue the union raises in its petition for review, *see International Union of Electric, Radio, & Machine Workers v. NLRB*, 727 F.2d 1184, 1192 (D.C. Cir. 1984) (motion for reconsideration not required where motion "clearly would have been an empty formality, serving the purposes of neither notice nor efficiency"), to which issue we now turn.

B. Discrimination

The Union argues the Board's decision is inconsistent with *NLRB v. Babcock & Wilcox Co.*, 351 U.S. 105 (1956), and with the Board's own prior decisions, because a facially discriminatory no-solicitation rule is facially invalid—that is, without regard to whether other nonemployees were granted access to the employer's premises to solicit for other causes. According to the Union, the Southeast Area Office Policy is facially discriminatory because it "singles out" union solicitation, and was "intended to have precisely" the effect of singling out union solicitation, for prohibition.

According to the Board, the Southeast Area Office Policy, which as described by its author directed employees neither to "aid . . . nor to hinder" union organizing, was not discrimi-

natory because it was part of a more general policy prohibiting solicitation for any purpose. The Board argues, therefore, the Postal Service could lawfully deny Grimes and Hardy access to the Bulk Mail Center unless the General Counsel showed the Postal Service "disparately denied non-employee union organizers access to solicit in the contract drivers' lounge." There was no evidence to that effect.

We think it clear the Postal Service did not single out union solicitation for prohibition. The starting point in our analysis, as is the Union's, is *Babcock & Wilcox,* in which the Supreme Court held "an employer may validly post his property against nonemployee distribution of union literature" so long as "the employer's notice or order does not discriminate against the union by allowing other distribution." 351 U.S. at 112; *see Lechmere, Inc. v. NLRB*, 502 U.S. 527, 535 (1992) (union has burden of showing "employer's access rules discriminate against union solicitation") (quoting *Sears, Roebuck & Co. v. Carpenters*, 436 U.S. 180, 205 (1978)). The employer's policies in this case—the Southeast Area Office Policy, providing that the Postal Service will "remain neutral" with regard to the Union's efforts to organize MCOA drivers, together with the employer's preexisting rule against commercial or charitable solicitation—meet this requirement. Regardless whether the Southeast Policy extended or merely particularized the employer's more general "no solicitation" rule, the overall effect was to prohibit all solicitation in the contract drivers' lounge. Therefore, "[a]bsent evidence of differential treatment of union and nonunion solicitors" in practice, that is, notwithstanding the policy prohibiting all solicitation, "there can be no finding of discrimination." *Stanford Hosp. & Clinics v. NLRB*, 325 F.3d 334, 346 (D.C. Cir. 2003).

The Board correctly found no record evidence that "management had ever been aware of, or permitted, solicitation of any kind in the contract drivers' lounge." Because there was no evidence the Postal Service "allow[ed] similar distribution or solicitation by nonemployee entities other than the union," *Lucile Salter Packard Children's Hospital at Stanford v.*

*NLRB*, 97 F.3d 583, 587 (D.C. Cir. 1996), there was no violation of § 8(a)(1).

## III. Conclusion

The Board had a rational basis for holding the Postal Service did not violate § 8(a)(1) of the Act. The Union's petition for review is therefore

*Denied.*