KAREN LECRAFT HENDERSON, Circuit Judge,
concurring in part and concurring in the judgment:
I agree with my colleagues that we should uphold the Board’s notice-reading remedy and strike its award of litigation expenses. We differ, however, in how we reach that result.
Judge Williams concludes that we should uphold the notice-reading remedy the Board imposed because HTH has been given “the option of punting the task to a Board employee.” Maj. Op. 678. Although earlier cases cast doubt on the propriety of singling out a particular corporate officer and “makfing] him sing,” see Conair Corp. v. NLRB, 721 F.2d 1355, 1402 (D.C.Cir.1983) (R.B. Ginsburg, J., dissenting), allowing a Board representative to read the notice instead appears to alleviate his concern. See Maj. Op. 677-78 (citing NLRB v. S.E. Nichols, Inc., 862 F.2d 952 (2d Cir.1988)). Judge Rogers would not rely on the Board-agent alternative in upholding the notice-reading remedy as Judge Williams does; she nonetheless finds it a reasonable “compromise.” See Rogers Op. 685, 686-87.
I disagree. In my view, the Board-agent alternative “creates a problem more severe than the one it supposedly solves.” Int’l Union of Elec., Radio & Mach. Workers, AFL-CIO v. NLRB (IUE), 383 F.2d 230, 233 n. 5 (D.C.Cir.1967); see also Teamsters Local 115 v. NLRB, 640 F.2d 392, 402 n. 11 (D.C.Cir.1981) (“We ... continue to doubt the propriety of having a Board representative perform the reading.”). As we explained in IUE, a Board representative reading the notice “put[s] the imprimatur of the Board on both a particular union’s activities, as well as on union activities in general,” 383 F.2d at 233 n. 5, thereby compromising the Board’s role as labor-law referee.[1]
*682 Judge Williams characterizes the imprimatur concern as “weak” because “the substance of the notice will make employees fully aware of how the Board has ruled” and “of which ‘side’ the Board has taken.” Maj. Op. 677-78 (emphasis in original). But even if the notice’s substance indicates “which ‘side’ the Board has taken” in this case, see id. at 678, when a Board agent stands up to castigate an employer in front of unionized employees, those employees are inevitably left with a perception of the Board as union enforcer, not neutral arbiter. A referee calling a foul is one thing; a referee calling a foul while wearing one team’s uniform is quite another. In short, who reads the notice matters.
That said, I believe we are without jurisdiction to consider the validity vel non of the Board-agent option. The alternative is not part of the remedy the ALJ recommended and to which HTH originally excepted. Further, HTH did not move for reconsideration, objecting to the Board’s modification of the remedy. Because we lack jurisdiction to consider an objection HTH has not first presented to the Board, see 29 U.S.C. § 160(e); see also Woelke & Romero Framing, Inc. v. NLRB, 456 U.S. 645, 665-66, 102 S.Ct. 2071, 72 L.Ed.2d 398 (1982), I would not reach this portion of the remedial order.
And my colleagues’ conclusion that HTH’s original objection to the ALJ’s remedy preserves its challenge to the notice-reading remedy as modified by the Board — including the Board-agent alternative — is, in my view, mistaken. See Maj. Op. 673-74. Although “an imprecisely drafted objection” may, when read in context, operate to preserve otherwise unob-jected-to issues, see id. at 673 (quoting Consol. Freightways v. NLRB, 669 F.2d 790, 794 (D.C.Cir.1981)), we have emphasized that a party’s “single reference to the ‘excessive breadth’ of a remedy with multiple parts is insufficient to satisfy section 10(e) because it failed to give the Board ‘ “adequate notice” of the argument it seeks to advance on review,’ ” Highlands Hosp. Corp. v. NLRB, 508 F.3d 28, 33 (D.C.Cir.2007) (emphasis added) (quoting Am. Postal Workers Union v. NLRB, 370 F.3d 25, 28 (D.C.Cir.2004)). I see no reason why the same proposition should not hold where, as here, the notice-reading remedy itself has “multiple parts.” See id. Simply because one part — singling out a specific reader — was objected to as extraordinary does not mean all additional requirements or alternatives added by the Board post-objection are covered by it.
This is especially true if (again, as is the case here) the remedy’s “multiple parts,” id., address different concerns. As my colleagues recognize, our earlier cases questioned the propriety of the individual-reader designation because of the affront to the reader’s dignity. See Maj. Op. 674-78. In contrast, the Board-agent option is problematic because it compromises the Board’s neutrality in the eyes (and to the ears) of the attending employees. See supra at 670-71. The same is true of the Board’s other modifications of the notice-reading remedy — ie., the requirement that supervisors attend and that a Union official be allowed to be present; they raise different issues. See Maj. Op. 673. I agree, then, with my colleagues when they say these other “additions ... seem distinctive,” id. (emphasis in original), and *683 that we are jurisdictionally barred from considering them, id. at 678. In my view, the Board-agent alternative is no different: it was added sua sponte by the Board, implicates concerns different from the general notice-reading remedy originally imposed and HTH never objected to it. Accordingly, I would hold that we are ju-risdictionally barred from considering HTH’s challenge to this alternative and therefore we must enforce it.
In my view, the only portion of the remedy properly before us is that a notice be read publicly and that Minicola be the one to read it. Judge Williams ably summarizes this remedy’s history in our circuit, see Maj. Op. 674-78, and, for the reasons he colorfully describes, see id. at 676-78, I am similarly troubled by the prospect of singling out a particular individual for a public “confession of sins,” Conair Corp., 721 F.2d at 1401 (R.B. Ginsburg, J., dissenting), no matter the egregiousness of his conduct. Nevertheless, our more recent cases have upheld such a remedy if the Board identifies a “particularized need” for it, as evidenced by “substantial links” between the reader’s conduct and the unfair labor practice. United Food & Commercial Workers Int’l Union, AFL-CIO v. NLRB, 852 F.2d 1344, 1348 (D.C.Cir.1988); cf. Federated Logistics, 400 F.3d at 938 (Henderson, J., dissenting). Given that Minicola was the primary source of HTH’s unfair labor practices,[2] our precedent — my concerns therewith notwithstanding — compels me to uphold the remedy. Because, as noted, we lack jurisdiction to consider HTH’s challenges to any other aspect of the notice-reading remedy, I concur in the judgment denying HTH’s petition on this issue.
My reasoning diverges from my colleagues’ on a second point as well. After concluding “that it is wrong to speak of agencies as having any inherent authority,” Maj. Op. 679 (emphasis in original), my colleagues then analyze “whether § 10(c) implicitly authorizes fee shifting based on bad faith,” see id. They ultimately conclude that section 10(c) does not by implication authorize fee shifting because fee shifting is punitive and the Board’s power is exclusively remedial. Id. at 679-81.
In my view, analyzing whether section 10(c) “implicitly” authorizes fee-shifting is unnecessary — and jurisprudentially out of bounds — to resolve this case. The Board relied exclusively on its purported “inherent authority” to award litigation expenses, not on section 10(c) or any other statutory authority. See HTH Corp., 361 N.L.R.B. No. 65, at 4 & n. 16 (Oct. 24, 2014) (“Because the Board may award litigation expenses against a party who engages in bad-faith conduct based on its inherent authority to control its own proceedings, it is unnecessary to pass on whether it may alternatively do so under its Sec. 10(c) remedial authority to effectuate the policies of the Act.”). And as my colleagues recognize, Maj. Op. 678-80, no such extra-statutory “inherent authority” exists, as the two dissenting Board members — with admirable modesty — recognized, see HTH Corp., 361 N.L.R.B. No. 65, at 21 (Member Miscimarra, dissenting *684 in part); id. at 26-27 (Member Johnson, dissenting in part). Contrary to the Board’s apparent belief, it is not a court of law or equity; it exercises only the powers granted by the Congress. See, e.g., Int’l Union of Elec., Radio and Mach. Workers, AFL-CIO v. NLRB, 502 F.2d 349, 352-53 n. * (D.C.Cir.1974) (opinion of MacKinnon, J.) (“Absent statutory authority, courts may, in the exercise of their inherent equitable powers, award attorney fees in certain carefully circumscribed situations where overriding considerations indicate the need for such a recovery.... An administrative agency possesses no such inherent equitable power, however, for it is a creature of the statute that brought it into existence; it has no powers except those specifically conferred upon it by statute.” (citation and quotation marks omitted)). Accordingly, I would hold that the Board has no “inherent authority” to award attorneys’ fees, period; in my view, that is all that need be said to justify granting HTH’s petition on this issue.[3]

. It is true that since IUE and Teamsters we have upheld a notice-reading remedy that included a Board-agent option and that we did so "without even a nod to IUE." Maj. Op. 677 (discussing Federated Logistics & Operations v. NLRB, 400 F.3d 920, 929-30 (D.C.Cir.2005)). My colleagues fail to mention, however, that we gave no “nod” to the Board-agent option, period. Other than a single reference made in describing the remedy imposed, the Federated court’s analysis focused exclusively on whether the notice-reading remedy — that "a Federated management official” read the notice — was lawful. See Federated Logistics, 400 F.3d at 929-30. The court plainly did not approve the Board-agent option as my colleagues do here, see Maj. Op. 677-78; Rogers Op. 686-87, and as we discussed (and rejected) the Board-agent option in IUE, 383 F.2d at 233 n. 5, and Teamsters, 640 F.2d at 402 & n. 11. Indeed, the Federated court had no reason to do so inasmuch as the general validity of an "any-responsible-officer” notice-reading was not in question. We also acknowledged its validity in Teamsters, ,640 F.2d at 404 (enforcing public reading only with "a responsible officer” of employer as reader), and even then-Judge Ginsburg, in *682 her emphatic dissent in Conair, would have upheld the notice-reading remedy at issue there had “a responsible officer” been required to read the notice rather than a specific person, see 721 F.2d at 1401. Accordingly, the Federated court had no reason to comment on the propriety of the Board-agent option and I believe we should not read its failure to do so as a sub silentio endorsement thereof.

. According to the ALJ’s findings, which the Board adopted and HTH does not dispute here, Minicola was involved in almost all of the unfair labor practices: he wrongfully fired an employee, see HTH Corp., 361 N.L.R.B. No. 65, at 37-41 (Oct. 24, 2014), wrongfully barred Union representatives from the Hotel's premises, id. at 41-43, and wrongfully made unilateral changes to employee policies, id. at 44-45. In perhaps the most extreme episode of Minicola's behavior discussed by the ALJ (and specifically noted by the Board, id. at 671 n. 10), when the Union informed Minico-la that his unilateral changes violated a court injunction, "Minicola replied, ‘F* * * the judge. He’s wrong.' ” Id. at 45.

. I fully concur in my colleagues’ conclusions, see Maj. Op. 672-73, regarding our lack of jurisdiction to consider HTH’s challenges to the other remedies the Board modified or imposed sua sponte — reimbursement of Union bargaining costs, general notice publication, Union visitation rights and enhancements to the notice-posting and notice-mailing remedies. I also fully concur in my colleagues’ conclusion that HTH's challenge to the litigation-expenses requirement is preserved under the futility exception. See id. at 674; Rogers Op. 684-85.