# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued October 23, 2007       Decided November 30, 2007

No. 06-1336

HIGHLANDS HOSPITAL CORPORATION, INC., *D/B/A* HIGHLANDS
REGIONAL MEDICAL CENTER,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

———

Consolidated with
06-1383

———

On Petition for Review
and Cross-Application for Enforcement
of an Order of the National Labor Relations Board

———

*Vincent Candiello* argued the cause and filed the briefs for petitioner.

*Stacy G. Zimmerman*, Attorney, National Labor Relations Board, argued the cause for respondent. With her on the brief were *Ronald E. Meisburg*, General Counsel, *John H. Ferguson*, Associate General Counsel, *Linda Dreeben*, Assistant General Counsel, and *David Habenstreit*, Supervisory Attorney.

Before: ROGERS, TATEL, and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: The National Labor Relations Board found that an employer's withdrawal of recognition from a union violated the National Labor Relations Act. The employer now argues it had a right to withdraw recognition because the union had lost majority support. Because substantial evidence supports the Board's finding that the employer failed to prove actual loss of majority support, we deny the petition for review and grant the Board's cross-application for enforcement. The employer also contends that the Board abused its discretion by imposing an affirmative bargaining order, but we lack jurisdiction to hear this challenge because the employer failed to raise it before the Board.

## I.

The National Labor Relations Board certified Service Employees International Union, District 1199 in June 1999 to represent a unit of registered nurses at Highlands Regional Medical Center (HRMC) in Prestonburg, Kentucky. Two years later, in September 2001, employees led by one of the nurses, Ilene Lewis, formed a "Nurses Decertification Committee" to campaign against union representation. The committee circulated a petition entitled "Highlands Regional Medical Center Showing of Interest for Decertification of SEIU Union Registered Nurses." On January 2, 2002, Lewis submitted a decertification petition to the Board, attaching as evidence the committee's petition. The Board blocked the petition pending resolution of unrelated unfair labor charges against HRMC.

A March 11 letter from the nurses' committee to HRMC Chief Executive Harold Warman asserted that thirty-eight of seventy-one nurses had shown "support for decertification" by

signing the petition, while "a number" of others—allegedly reluctant to sign for fear of repercussions—had expressed verbal opposition to the union. Citing only the petition, Warman notified both the nurses and the union on March 19 that HRMC would cancel negotiations set to begin the next day and would withdraw recognition upon expiration of the contract. This is precisely what HRMC did: on April 12, the day on which the collective bargaining agreement expired, HRMC withdrew recognition. Then, without notifying or negotiating with the union, Warman announced a "significant" increase in hourly wages for nurses.

The union filed two unfair labor practice charges alleging violations of the National Labor Relations Act—specifically, sections 8(a)(1) and (5). 29 U.S.C. § 158(a)(1), (5). Section 8(a)(1) bars employers from interfering with, restraining, or coercing employees in the exercise of their rights to organize and bargain collectively, while section 8(a)(5) requires employers to bargain with employees' designated union representatives. *Id.* The first charge came the day after HRMC announced its intent to withdraw recognition and cancel bargaining sessions. The second followed HRMC's unilateral wage increase.

Before an administrative law judge, HRMC contended that both the withdrawal of recognition and pay raise were lawful because it had shown "actual loss of majority support" for the union as required by *Levitz Furniture Co. of the Pacific*, 333 N.L.R.B. 717, 724-25 (2001). At the hearing, the parties stipulated that on April 12, the date of withdrawal, the bargaining unit included sixty-eight employees, thirty-four of whom had signed the petition. One nurse, Shirley Mausser, testified that she signed only after being told the petition aimed to preserve employee choice and that she later joined the union and authorized HRMC to deduct union dues from her pay. Lists

of employees reviewed weekly by HRMC executives before April 12 and introduced into evidence identified Mausser as a union member. To show loss of majority support, HRMC presented testimony from thirty-five nurses who allegedly disapproved of the union before withdrawal. Thirty of the testifying nurses had signed the committee's petition. Although five others claimed that they had opposed the union on April 12, prior to that time none had revealed their views directly to HRMC managers. Warman, for example, was unable to "recall or link any particular statement with any particular" member of the bargaining unit. *Highlands Hosp. Corp.*, 347 N.L.R.B. No. 120, at 12 (Aug. 31, 2006). The ALJ concluded that HRMC's evidence failed to prove actual loss of majority support for two reasons: (1) the showing of interest petition in part reflected support for an election, without necessarily implying opposition to the union; and (2) the petition contained valid signatures from less than half the nurses who were members of the bargaining unit on April 12. *Id.* at 2-3.

The Board adopted the ALJ's findings on both points. As to the petition's meaning, the Board stressed that its text—"showing of interest for decertification"—failed to indicate clear opposition to the union; that committee members repeatedly claimed to be seeking an election; and that three nurses had signed only after being informed the petition's aim was an election. Turning to the number of valid signatures, the Board emphasized that "the parties agree that the petition was signed by half of the unit members only if the signature of employee Mausser is counted." *Id.* at 4. Because of Mausser's "unequivocal, postpetition demonstration of support" for the union, the Board concluded that the petition "contained an insufficient number of valid signatures" to show actual loss of majority support even if it "clearly expressed the signers' desire not to be represented." *Id.* Finally, the Board disregarded the trial testimony of the thirty-five nurses "because this evidence

was not before [HRMC] when it withdrew recognition." *Id.* at 4 n.17.  On this basis, the Board ruled that HRMC violated the NLRA by withdrawing recognition and increasing wages unilaterally.  *Id.* at 3.  As remedies, the Board ordered HRMC to: (1) cease and desist from violating the NLRA; (2) rescind the unilateral pay increase if the union so requests; (3) let the union post notices on employee bulletin boards for six months; (4) provide the union names and addresses of nurses currently in the bargaining unit; and (5) bargain with the union.  *Id.* at 4-7.

HRMC now challenges the two unfair labor charges stemming from its withdrawal of recognition, as well as the Board's affirmative bargaining order.  We accept the Board's findings of fact as conclusive if supported by substantial evidence on the record as a whole.  29 U.S.C. § 160(e).  Because substantial evidence means "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" we "will reverse for lack of substantial evidence 'only when the record is so compelling that no reasonable factfinder could fail to find to the contrary.'" *Palace Sports & Entm't, Inc. v. NLRB*, 411 F.3d 212, 220 (D.C. Cir. 2005) (quoting *Resort Nursing Home v. NLRB*, 389 F.3d 1262, 1270 (D.C. Cir. 2004)).

## II.

According to longstanding Board policy, unions certified under NLRA section 9(c), 29 U.S.C. § 159(c), enjoy a presumption of majority status.  *Levitz*, 333 N.L.R.B. at 720 & n.17.  This presumption is conclusive for up to three years during the term of a collective bargaining agreement.  *See Auciello Iron Works, Inc. v. NLRB*, 517 U.S. 781, 786 (1996).  After the agreement expires, however, employers may rebut the presumption.  *Levitz*, 333 N.L.R.B. at 720 & n.17.  Prior to *Levitz*, employers could rebut the presumption by showing no more than good-faith doubt about a union's majority status

before withdrawing recognition. *See Celanese Corp. of Am.*, 95 N.L.R.B. 664, 671-72 (1951). But in *Allentown Mack Sales & Service, Inc. v. NLRB*, 522 U.S. 359 (1998), the Supreme Court directed the Board to interpret "doubt" to mean uncertainty, a less stringent standard than the Board's prior approach, which defined doubt as disbelief. *Id.* at 367, 373-74; *Levitz*, 333 N.L.R.B. at 723. That said, *Allentown Mack* recognized the Board's discretion to adopt a different test. 522 U.S. at 373-74 ("As a theoretical matter (and leaving aside the question of legal authority), the Board could certainly have raised the bar for . . . withdrawal of recognition by imposing a more stringent requirement than the reasonable-doubt test . . . ."). Capitalizing on this opportunity, the Board decided in *Levitz* that requiring employers to show actual loss of majority support, rather than good-faith doubt, would better serve the NLRA's twin goals of "ensuring employee free choice and promoting stability in bargaining relationships." *Levitz*, 333 N.L.R.B. at 724. In particular, the Board announced:

> [W]e hold that an employer may rebut the continuing presumption of an incumbent union's majority status, and unilaterally withdraw recognition, only on a showing that the union has, in fact, lost the support of a majority of the employees in the bargaining unit. . . .
>
> We emphasize that an employer with objective evidence that the union has lost majority support—for example, a petition signed by a majority of the employees in the bargaining unit—withdraws recognition at its peril. If the union contests the withdrawal of recognition in an unfair labor practice proceeding, the employer will have to prove by a preponderance of the evidence that the union had, in fact, lost majority support at the time the employer withdrew recognition. If it fails to do so, it will not

> have rebutted the presumption of majority status, and the withdrawal of recognition will violate Section 8(a)(5).

*Id.* at 725.

In this case, HRMC disputes only the application of the *Levitz* standard, not its validity. *Levitz* places the burden on HRMC to prove by a preponderance of the evidence that on April 12, the day the collective bargaining agreement expired, the union "had, in fact, lost majority support." *Id.* Given the deference we owe the Board's factual findings, substantial evidence supports its determination that HRMC failed to prove actual loss of majority support at the time of withdrawal. In communications with both the union and bargaining unit employees, HRMC expressly relied on the petition, and only the petition, to justify its decision to withdraw recognition, and at the evidentiary hearing, it stipulated that without the signature of Mausser the petition lacked support from a majority of nurses. Before withdrawing recognition, moreover, HRMC executives were aware of Mausser's support for and membership in the union. Under *Levitz*, absent other "objective evidence" in HRMC's possession at the time of withdrawal, *id.*, HRMC's stipulation and its knowledge that Mausser had joined the union dispose of this case.

HRMC insists that it did have additional evidence of loss of majority support. Specifically, it points to the hearing testimony of thirty-five nurses, five of whom had declined to sign the petition but later claimed, after the pay raise, to have opposed the union. Both the Board and ALJ, however, refused to credit this testimony, and for good reason: HRMC had no knowledge of that corroborating evidence on the day it withdrew recognition. *Highlands*, 347 N.L.R.B. No. 120, at 4 n.17, 10. On that crucial date, then, besides the committee's petition,

HRMC had only unsubstantiated hearsay assertions that other employees opposed the union, which "certainly do not establish the fact of . . . disfavor with the degree of reliability ordinarily demanded in legal proceedings." *Allentown Mack*, 522 U.S. at 369 (emphasis omitted).

HRMC also challenges the alternative basis for the Board's decision—that certain nurses believed the petition's purpose was to obtain an election. But given our conclusion that the petition lacked majority support and that HRMC has thus failed to carry its burden under *Levitz*, we have no need to address this challenge.

### III.

This brings us to HRMC's challenge to the bargaining order. HRMC contends that the Board failed adequately to justify this "extreme remedy," which "invades" the rights of nurses opposed to the union. Pet'r's Opening Br. 32, 34. In response, the Board argues that we lack jurisdiction to address this issue because HRMC failed to raise it before the Board.

NLRA section 10(e) provides that "[n]o objection that has not been urged before the Board . . . shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." 29 U.S.C. § 160(e); *see also Woelke & Romero Framing, Inc. v. NLRB*, 456 U.S. 645, 665-66 (1982). In its exceptions to the ALJ's decision, HRMC never mentioned the affirmative bargaining order. It objected only to the "excessive breadth of the remedy with which the ALJ ordered [HRMC] to comply." In its briefs before the Board, moreover, HRMC offered no arguments at all regarding the ordered remedy.

HRMC's single reference to the "excessive breadth" of a remedy with multiple parts is insufficient to satisfy section 10(e)

because it failed to give the Board "'adequate notice' of the argument it seeks to advance on review." *Am. Postal Workers Union v. NLRB*, 370 F.3d 25, 28 (D.C. Cir. 2004) (quoting *Alwin Mfg. Co. v. NLRB*, 192 F.3d 133, 143 (D.C. Cir. 1999)). This "generalized objection" resembles an exception to a remedial order "in its entirety," which we have found too broad to preserve challenges against affirmative bargaining orders. *Prime Serv., Inc. v. NLRB*, 266 F.3d 1233, 1241 (D.C. Cir. 2001). HRMC identifies no extraordinary circumstances to excuse its failure to preserve this issue with adequate specificity. To be sure, the Board on its own considered the bargaining order and found it justified. *Highlands*, 347 N.L.R.B. No. 120, at 5. As the Supreme Court has made clear, however, "[t]he § 10(e) bar applies even though" the Board has decided an issue. *Woelke*, 456 U.S. at 666; *see also Local 900, Int'l Union of Elec., Radio & Mach. Workers v. NLRB*, 727 F.2d 1184, 1192 (D.C. Cir. 1984) ("[T]he fact that the Board has or has not discussed an issue raises no necessary inferences with respect to section 10(e)."). Accordingly, we lack jurisdiction to consider HRMC's challenge to the bargaining order.

## IV.

For the reasons given above, we deny HRMC's petition for review and grant the Board's cross-application for enforcement.

*So ordered.*