PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

NATIONAL LABOR RELATIONS BOARD,
                                   *Petitioner,*

v.

HQM OF BAYSIDE, LLC,
                                   *Respondent.*                    No. 06-2253

UNITED FOOD & COMMERCIAL
WORKERS UNION, Local 400,
                                   *Intervenor.*

On Application for Enforcement of an Order
of the National Labor Relations Board.
(5-CA-30964)

Argued: December 5, 2007

Decided: March 10, 2008

Before WILLIAMS, Chief Judge, MOTZ, Circuit Judge, and
HAMILTON, Senior Circuit Judge.

Application for enforcement granted by published opinion. Chief
Judge Williams wrote the opinion, in which Judge Motz and Senior
Judge Hamilton joined.

## COUNSEL

**ARGUED:** D. Patton Pelfrey, FROST, BROWN, TODD, Louisville,
Kentucky, for Respondent. Elizabeth A. Heaney, NATIONAL

LABOR RELATIONS BOARD, Washington, D.C., for Petitioner. Carey Robert Butsavage, BUTSAVAGE & ASSOCIATES, P.C., Washington, D.C., for Intervenor. **ON BRIEF:** John T. Lovett, FROST, BROWN, TODD, Louisville, Kentucky, for Respondent. Ronald Meisburg, General Counsel, John E. Higgins, Jr., Deputy General Counsel, John H. Ferguson, Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, Fred B. Jacob, Supervisory Attorney, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for Petitioner.

**OPINION**

WILLIAMS, Chief Judge:

After finding that HQM of Bayside ("Bayside") unlawfully withdrew recognition from a union, the National Labor Relations Board (the "Board") petitioned this court to enforce its order against Bayside. The Board maintains that because the union had not lost majority support, Bayside's unilateral withdrawal of recognition from (and subsequent refusal to bargain with) the union violated Sections 8(a)(1) and (5) of the National Labor Relations Act (the "Act"), 29 U.S.C.A. § 158(a)(1) & (5) (West 1998 & Supp. 2007). Because we conclude that substantial evidence supports the Board's findings, we grant the Board's application for enforcement.

In addition, Bayside argues that the Board abused its discretion in imposing an affirmative bargaining order. We lack jurisdiction to consider this challenge, however, because Bayside failed to raise it before the Board.

I.

Bayside owns and operates the Bayside Care Center, a nursing home located in Lexington Park, Maryland. On October 20, 1998, the Board certified the United Food & Commercial Workers, Local 400 (the "Union") as the exclusive collective bargaining representative for a "unit" of employees consisting of:

[a]ll full-time and regular part-time hourly employees employed by [Bayside] at its Bayside Care Facility; but excluding Registered Nurses, Licensed Practitioner Nurses, business office clerical employees, managers, guards and supervisors as defined by the [National Labor Relations Act].

(J.A. at 110.) Initially, Bayside proved reluctant to bargain with the Union, and, as a result, the Union filed a successful unfair labor practices charge. After the Union prevailed on the charge, on December 28, 2001, Bayside and the Union entered into a collective bargaining agreement effective from December 1, 2001 until November 30, 2002.

In September 2002, roughly two months prior to the expiration of the collective bargaining agreement, some of Bayside's employees circulated a "disaffection petition" stating as follows: "We the employees of Bayside Care Center do not no [sic] longer want to be represented by [the Union]." (J.A. at 111.) The petition garnered 34 signatures, reflecting a majority of the bargaining unit employees.

On September 30, employee Barbara Courtney (who had not signed the disaffection petition) filed a decertification petition with the Board, citing the disaffection petition in support of her request for an election. The Board dismissed her decertification petition as untimely.[1]

On October 30, 2002, three days after receiving a copy of the disaffection petition, Bayside notified the Union that it believed the Union no longer represented a majority of Bayside employees and would withdraw recognition of the Union when the collective bargaining agreement expired on December 1, 2002. Bayside did not send the Union a copy of the disaffection petition along with the notice.

---

[1]In the healthcare industry, a decertification petition must be filed more than 90 days, but less than 120 days, before the expiration of a valid collective bargaining agreement of not more than three years duration. *Trinity Lutheran Hosp.*, 218 N.L.R.B. 199 (1975).

Shortly thereafter, in early November 2002, a petition entitled "We the following employees of Bayside Care Center, Lexington Park, Maryland, DO NOT wish to withdraw recognition and or representation of [the Union]" ("the Union's petition") was circulated among the employees. This petition also garnered 34 signatures. On November 26, 2002, the Union notified Bayside by letter that a majority of bargaining unit employees had signed a petition stating that they desired to maintain the Union as their bargaining representative. The Union's letter also indicated that it had submitted the petition to the Board. The Union did not, however, attach a copy of its petition to the letter.

Undeterred, Bayside withdrew recognition of the Union on December 1, 2002, and has since refused to bargain with the Union.

In response, the Union filed a charge alleging, among other claims, that Bayside unlawfully withdrew recognition from and refused to bargain with the Union. Thereafter, the Board's General Counsel issued a complaint and notice of hearing.[2]

On October 14, 2003, an Administrative Law Judge ("ALJ") conducted the hearing in Washington D.C. Bayside, the Union, and the Board's General Counsel had stipulated to most of the relevant facts. Regarding the petitions and the employees who signed them, the parties stipulated that: (1) Three of the 34 employees that signed the disaffection petition were no longer employed by Bayside on December 1, 2002 (meaning that, for purposes of this case, the disaffection petition had 31 valid signatures); (2) Twenty-eight of the 34 signatures on the Union's petition were valid;[3] (3) Thirteen unit employees

---

[2]Bayside and the Union reached a non-Board settlement on all issues raised in the charge, save the issues relating to the lawfulness of the withdrawal of recognition and refusal to bargain. On October 14, 2003, the Board conditionally approved dismissal of the portions of the charge underlying the settlement, with the condition being the parties' performance of the undertakings in the private settlement agreement.

[3]Only 28 of the signatures on the Union's petition were valid because one employee signed the petition twice; two of the signatures belonged to employees who did not qualify as part of the unit; and two of the signatures belonged to employees who were no longer employed by Bayside on December 1, 2002.

signed both the disaffection petition and the Union's petition; and (4) One of the 13 "cross-over signatures" was invalid because it belonged to an employee that was no longer employed by Bayside as of December 1, 2002. Thus, the only factual dispute involved the number of employees in the bargaining unit. The parties had stipulated that the unit contained at least 58 employees, but the Board's General Counsel and the Union argued that three additional employees were part of the unit. The ALJ agreed, finding that the total number of employees in the bargaining unit was 61. (J.A. at 166.)

Applying *Levitz Furniture Co. of the Pacific*, 333 N.L.R.B. 717 (2001), the ALJ explained that Bayside could unilaterally withdraw recognition of the Union without violating the Act only if it could show that, at the time of the withdrawal, the Union had in fact lost the support of a majority of the employees in the bargaining unit. The ALJ found that Bayside had 31 valid signatures from unit employees on the disaffection petition at the time it withdrew recognition. The ALJ concluded, however, that Bayside was not entitled to rely on the signatures of those 13 employees that also signed the Union's petition because those employees had "clearly manifest[ed] that [they] had changed their sentiments about the Union." (J.A. at 166.) The ALJ determined that, without the cross-over signatures, Bayside lacked objective evidence that a majority of unit employees no longer supported the Union. Accordingly, the ALJ held Bayside in violation of the Act and, as a remedy, imposed a cease-and-desist and affirmative bargaining order. (J.A. at 167.)

Bayside filed exceptions with the Board to the ALJ's decision. In addition to 16 specific exceptions related to the ALJ's factual findings and legal conclusions, Bayside included generalized exceptions objecting to the ALJ's "Order" and "Appendix Notice to Employees" insofar as those portions of the ALJ's decision related to the ALJ's factual findings and legal conclusions. Of relevance to this appeal, Bayside filed exceptions to "those portions of the [ALJ's] 'ORDER' which relate to the [ALJ's] findings and conclusions of law with regard to any and all Section 8(a)(1) and (5) violations found against [Bayside]" and to "those portions of the [ALJ's] 'ORDER' which relate to the [ALJ's] findings and conclusions of law to which [Bayside] has excepted." (Supp. J.A. at 4.)

The Board affirmed. Like the ALJ, the Board concluded that because the cross-over signatures should be disregarded, the disaffection petition provided evidence that 18 unit employees did not support the Union. In addition, the Board found that employee Courtney's filing of the decertification petition evidenced her desire not to be represented by the Union. Thus, the Board concluded, Bayside had shown that 19 unit employees no longer wished to be represented by the Union on the date Bayside withdrew recognition. Because 19 is not a majority of either 58 or 61, the Board found Bayside's evidence insufficient to satisfy its burden of proof.

In addition, the Board concluded that an affirmative bargaining order was necessary to fully remedy the violation in this case. The Board explained that, although it has held that such an order represents the traditional, appropriate remedy for a refusal to bargain, the D.C. Circuit requires it to justify an affirmative bargaining order on the facts of each case by applying a three-factor analysis.[4] The Board therefore conducted the analysis required by the D.C. Circuit and found an affirmative bargaining order to be appropriate.

The Board petitioned for enforcement of its order. We have jurisdiction pursuant to 29 U.S.C.A. § 160(e) (West 1998 & Supp. 2007) (providing that the Board shall have the power to petition the court of appeals for the circuit in which the unfair labor practice occurred for enforcement of its order(s)).

## II.

## A.

In considering a petition for review, we must treat the Board's findings of fact as conclusive if they are supported by substantial evidence on the record considered as a whole. 29 U.S.C.A. § 160(f). The

---

[4]D.C. Circuit precedent requires that the Board's analysis explicitly balance three considerations: (1) the employee's rights under the Act, (2) whether other purposes of the Act override the employees' right to choose their bargaining representatives; and (3) whether alternative remedies are adequate to remedy the violations. *See, e.g.*, *Vincent Industrial Plastics, Inc. v. N.L.R.B.*, 209 F.3d 727, 738 (D.C. Cir. 2000).

substantial evidence standard likewise governs our review of the Board's resolution of mixed questions of law and fact. *See Sam's Club, a Div. of Wal-Mart Stores, Inc. v. N.L.R.B.*, 173 F.3d 233, 239 (4th Cir. 1999) ("When we review mixed questions, the Board's application of legitimate legal interpretations to the facts of a particular case should be upheld if they are supported by substantial evidence based upon the record as a whole."). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). It constitutes "more than a scintilla but less than a preponderance of evidence." *Id.* (internal quotation marks omitted).

As we review the record for substantial evidence, we "must not only consider the evidence used to support the Board's factual conclusion, but [we] also must take into account whatever in the record fairly detracts from the Board's factfinding." *Id.* (internal quotation marks omitted). We will not, however, "displace the Board's choice between two fairly conflicting views" of the evidence, even if we would "justifiably have made a different choice had the matter been before [us] de novo." *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951).

B.

The Board found Bayside in violation of Sections 8(a)(1) and (5) of the Act. Section 8(a)(1) makes it an unfair labor practice to "interfere with, restrain, or coerce employees in the exercise of [their rights under the Act]," while Section 8(a)(5) makes it an unfair labor practice for an employer "to refuse to bargain collectively with the representatives of his employees." 29 U.S.C.A. § 158(a)(1), (5).

The Act does not specify how a union's majority support must be determined. Accordingly, the Board has filled the gap in a manner that seeks to "give effect to employees' free choice of bargaining representatives" and to give collective-bargaining relationships "a chance to bear fruit" by preventing them from being subject to constant challenge. *Levitz Furniture Co.*, 333 N.L.R.B. at 720. To that end, the Board has long held that once the employees comprising a particular bargaining unit have elected a union to represent them, that union enjoys an irrebutable presumption of majority support during the term

of a collective bargaining agreement that is three years or less in duration. The presumption becomes rebuttable after the expiration of such an agreement. *Id.* & n.17; *Auciello Iron Works, Inc. v. N.L.R.B.*, 517 U.S. 781, 786 (1996).

In *Levitz Furniture Co.*, the Board established that an employer may "rebut the continuing presumption of an incumbent union's majority status, and unilaterally withdraw recognition, only on a showing that the union has, in fact, lost the support of a majority of the employees in the bargaining unit."[5] 333 N.L.R.B. at 725. Thus, if the employer withdraws recognition and the union contests the withdrawal in an unfair labor practice proceeding, "the employer [must] prove by a preponderance of the evidence that the union had, in fact, lost majority support at the time the employer withdrew recognition." *Id.* "If [the employer] fails to do so, it will not have rebutted the presumption of majority status, and the withdrawal of recognition will violate Section 8(a)(5)." *Id.*

*Levitz Furniture Co.* stressed that "an employer with objective evidence that the union has lost majority support — for example, a petition signed by a majority of the employees in the bargaining unit — withdraws recognition at its peril." *Id.* It also emphasized that "Board-conducted elections are the preferred way to resolve questions regarding employees' support for unions" and adopted a "good faith uncertainty" standard for obtaining such an election, in part so that employers faced with contradictory evidence could obtain elections. *Id.* at 723, 728.

### C.

Applying our deferential standard of review, we affirm the Board's decision. The Board reasonably rejected Bayside's argument that the disaffection petition satisfied its burden of proving an actual loss of majority support "*at the time [it] withdrew recognition,*" *id.* at 725

---

[5]*Levitz Furniture Co. of the Pacific*, 333 N.L.R.B. 717 (2001), overruled a prior line of cases that permitted an employer to lawfully withdraw recognition of a union on the basis of a good-faith doubt as to the union's continued majority status. *See id.* at 725. Bayside disputes only the Board's application of the *Levitz* standard, not its validity.

(emphasis added), because many of the signatories evidenced a change of heart, or, at the very least, an incompatible position, by also signing the Union's petition before Bayside withdrew recognition. Finding no fault with the Board's arithmetic, we therefore conclude that substantial evidence supports the Board's finding that Bayside failed to rebut the Union's presumption of majority support. *Accord Highlands Hosp. Corp. v. N.L.R.B.*, 508 F.3d 28, 32 (D.C. Cir. 2007) (affirming the Board's finding that a petition did not satisfy an employer's burden of proving an actual loss of majority support because one signatory's unequivocal post-petition demonstration of support for the union invalidated her signature and, without that signature, the petition lacked support of a majority of bargaining unit employees); *see also Parkwood Dev. Center, Inc.*, 347 N.L.R.B. No. 95 at *2 (2006) (holding that the employer failed to meet its burden of proof because "[a]t most, [the employer] had conflicting evidence concerning employees' support for the Union").

III.

There remains Bayside's challenge to the affirmative bargaining order. The Board and the Union contend that we lack jurisdiction to address Bayside's challenge because the company did not raise it before the Board. Bayside counters that its exceptions and accompanying brief adequately preserved the question for appeal.

Pursuant to Section 10(e) of the Act, "[n]o objection that has not been urged before the Board . . . shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." 29 U.S.C.A. § 160(e) (West 1998 & Supp. 2007). This statutory provision represents a jurisdictional bar against judicial review of issues not raised before the Board. *See Woelke & Romero Framing, Inc. v. N.L.R.B.*, 456 U.S. 645, 665-66 (1982).

Bayside claims that it objected to the imposition of an affirmative bargaining order through its exception to "those portions of the [ALJ's] 'ORDER' which relate to the [ALJ's] findings and conclusions of law with regard to any and all Section 8(a)(1) and (5) violations found against [Bayside]" and "to the . . . findings and conclusions of law to which [Bayside] has excepted." (Supp. J.A. at

4.) As further evidence of its compliance with § 10(e) of the Act, Bayside points to a single sentence in its "Brief in Support of Exceptions to the Administrative Law Judge's Decision, Order and Recommendation, Appendix and Notice to Employees," stating that "the [ALJ] erred in ruling that [Bayside] engaged in conduct in violation of Sections 8(a)(1) and (5) of the Act and [o]rdering [Bayside] to recognize the Union and bargain collectively in good faith with the Union." (J.A. at 176.)

Bayside's generalized exceptions, however, do not satisfy § 10(e), for they failed to provide the Board "adequate notice of the argument [Bayside] seeks to advance on review." *Highlands Hosp. Corp.*, 508 F.3d at 33 (internal quotation marks omitted). We have previously held that "general catchall language" used in an exception objecting to "each and every part of the remedy recommended by the [ALJ]" is insufficient to set forth a valid exception that permits us to consider on appeal an issue not argued before the Board. *N.L.R.B. v. Daniel Constr. Co.*, 731 F.2d 191, 198 (4th Cir. 1984) (internal quotation marks omitted). Similarly, in *Quazite Div. of Morrison Molded Fiberglass Co. v. N.L.R.B.*, 87 F.3d 493 (D.C. Cir. 1996), the D.C. Circuit held that excepting to a remedy "in its entirety" was insufficient to preserve an issue for appeal because the exception "[wa]s far too broad to preserve a particular issue for appeal" and "merely reassert[ed] that [the employer] did not violate the Act and therefore, that no remedial order at all [wa]s necessary or proper." *Id.* at 497.

In objecting to those portions of the ALJ's remedial order that related to the ALJ's factual findings and legal conclusions, Bayside essentially asserted that, because the basis for the remedial order (the finding that Bayside violated the Act) was unsound, so too was the order imposing a remedy. Bayside's exceptions did not assert any of the grounds for invalidating the affirmative bargaining order that it now seeks to raise before us. Likewise, in its brief in support of the exceptions, Bayside raised two issues — (1) whether the ALJ erred in finding that the bargaining unit had 61 members, and (2) whether the ALJ erred in finding that Bayside violated the Act by withdrawing recognition of the Union. The brief in support of exceptions did not contain any arguments related to the appropriateness of the affirmative bargaining order, nor did Bayside articulate any such arguments at the hearing before the Board.

In this respect, Bayside is like the employer in *Daniel Constr. Co.*, urging this court that "general catchall language" suffices to permit consideration of an issue not argued to the Board. Moreover, Bayside's exceptions offered the Board less notice of the argument Bayside now seeks to advance than those recently deemed inadequate in *Highlands Hosp. Corp.*, 508 F.3d at 32-33. *See id.* (holding that the court lacked jurisdiction to consider a challenge to an affirmative bargaining order because the employer's exceptions, which contained a single reference to the "excessive breadth" of the ALJ's multi-part remedy, did not meet the requirements of § 160(e)). There, the employer at least identified a specific ground for challenging the remedial order — its alleged overbreadth. Here, in contrast, Bayside never identified any basis for its exception to the remedy imposed other than its insistence that it had not violated the Act.

In short, Bayside never fairly presented its challenge to the affirmative bargaining order to the Board. This lack of notice deprived the Board of the opportunity to factor Bayside's contentions into its decision. *See Local 900, Int'l Union of Elec. Radio and Mach. Workers v. N.L.R.B.*, 727 F.2d 1184, 1191 (D.C. Cir. 1984) (explaining that the "notice function [of § 160(e)] . . . ensures that the Board has the opportunity to resolve all issues properly within its jurisdiction"). It is thus irrelevant that, in imposing an affirmative bargaining order, the Board *sua sponte* opted to apply the three-part analysis mandated by the D.C. Circuit and to explain in detail the reasons it considered an affirmative bargaining order necessary to remedy the violation in this case. *See Woelke*, 456 U.S. at 66 (explaining that "[t]he § 10(e) bar applies" to issues decided by the Board); *Local 900, Int'l Union of Elec. Radio and March Workers*, 727 F.2d at 1193 ("the fact that the Board has or has not discussed an issue raises no necessary inferences with respect to section 10(e)"). We therefore conclude that § 10(e) precludes our consideration of Bayside's challenge to the affirmative bargaining order.

## IV.

In sum, we hold that substantial evidence supports the Board's finding that the Union had not lost majority support at the time Bayside withdrew recognition, and, as a result, Bayside's unilateral withdrawal of recognition and subsequent refusal to bargain with the

Union violated Sections 8(a)(1) and (5) of the Act. Moreover, we lack jurisdiction to address Bayside's challenge to the remedy imposed. Accordingly, the Board's application for enforcement is hereby

*GRANTED*.