# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued December 6, 2007        Decided April 11, 2008

No. 07-1006

PARKWOOD DEVELOPMENTAL CENTER, INC.,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

UNITED FOOD AND COMMERCIAL WORKERS INTERNATIONAL
UNION, LOCAL 1996,
INTERVENOR

———

Consolidated with
07-1027

———

On Petition for Review and Cross-Application for
Enforcement
of an Order of the National Labor Relations Board

———

*Charles P. Roberts, III* argued the cause for petitioner.
With him on the briefs was *Clifford H. Nelson, Jr.*

*William M. Bernstein*, Senior Attorney, National Labor Relations Board, argued the cause for respondent. With him on the brief were *Ronald E. Meisburg*, General Counsel, *John H. Ferguson*, Associate General Counsel, *Linda Dreeben*, Assistant General Counsel, and *Meredith L. Jason*, Supervisory Attorney.

*James D. Fagan, Jr.* was on the brief for intervenor United Food and Commercial Workers International Union, Local 1996.

Before: GINSBURG, RANDOLPH, and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

GRIFFITH, *Circuit Judge*: Parkwood Developmental Center, Inc. ("Parkwood") petitions for review of an order of the National Labor Relations Board ("Board") that determined that the company unlawfully withdrew recognition from an incumbent union upon expiration of its collective bargaining agreement. The Board concluded that Parkwood had permissibly based its anticipatory withdrawal decision on an employees' petition renouncing union representation, but then improperly ignored a counter-petition rescinding the renunciation. For the reasons set forth below, we deny Parkwood's petition for review and grant the Board's cross-application to enforce its order.

## I.

Parkwood runs a home for the developmentally disabled in Valdosta, Georgia. Until 2003, the employees who worked at the home were represented by the United Food and Commercial Workers International Union, Local 1996

("Union"). Parkwood and the Union were parties to a collective bargaining agreement ("CBA") that was scheduled to expire March 8, 2003.

On December 2, 2002 Parkwood was presented with a petition, signed by a majority of its employees at the home, announcing that they no longer wished to be represented by the Union. Believing that the Union no longer enjoyed majority support, Parkwood told the Union of the petition that same day and declared it would cease dealing with the Union upon expiration of the CBA. From that moment onward, Parkwood refused to negotiate with the Union for a successor agreement.[1]

On March 7, 2003, the day before expiration of the CBA, the Union presented to Parkwood a counter-petition, also signed by a majority of the employees at the home, declaring a renewed desire for Union representation and "revok[ing], rescind[ing] and cancel[ing]" the earlier petition. Parkwood was unmoved by this eleventh-hour show of support for the Union. When the CBA expired the next day, Parkwood refused to recognize the Union or bargain with it for a new agreement.

The Union filed charges with the Board alleging, among other things, that Parkwood violated § 8(a)(5) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158(a)(5), by

---

[1] Parkwood chose to rely upon the employees' petition as its sole barometer of union support, and did not file with the Board a Representation Management petition ("RM petition"), 29 U.S.C. § 159(c)(1)(B); 29 C.F.R. § 102.60(a). Parkwood was under no duty to file an RM petition, but had it done so the company could have secured a Board-administered, secret-ballot election to determine whether it had an obligation to bargain with the Union.

unlawfully withdrawing recognition from the Union.[2] An administrative law judge ("ALJ") found that Parkwood did not violate the NLRA by withdrawing recognition from the Union in response to the employees' petition, notwithstanding their counter-petition to the contrary. Parkwood, the Union, and the General Counsel each filed exceptions to the ALJ's decision. *See* 29 C.F.R. § 102.46(a)–(c) (establishing procedures for "exceptions"). Parkwood and the General Counsel then filed answering briefs responding to each other's exceptions. *See id.* § 102.46(d) (establishing procedures for "answering briefs").

In its decision and order of August 22, 2006, the Board reversed the ALJ's finding that the withdrawal of recognition had been lawful. *Parkwood Developmental Ctr., Inc.*, 347 N.L.R.B. No. 95, 2006 WL 2459498 (2006). Concluding that Parkwood had violated the NLRA by refusing to deal with the Union despite a counter-petition voicing majority support, *id.* slip op. at 2–3 (citing *Levitz Furniture Co. of the Pacific*, 333 N.L.R.B. 717 (2001)), the Board imposed an affirmative bargaining order on the company. Parkwood filed a motion for reconsideration objecting to this remedy, which the Board denied as untimely. Parkwood petitions this court for review of the Board's order and the denial of its motion for reconsideration. The Board cross-petitions for enforcement of its order, and the Union intervenes in support of the Board.

---

[2] The Union also alleged violations of § 8(a)(1) of the NLRA, 29 U.S.C. § 158(a)(1). The administrative law judge found, and the Board agreed, that Parkwood violated § 8(a)(1) and § 8(a)(5) by blaming the Union for a lack of salary raises, by prohibiting an employee from discussing Union business on company time, and by unilaterally changing employees' health insurance benefits. Parkwood concedes that the Board is entitled to summary affirmance on these points. Parkwood's Br. at 2 n.3.

## II.

We begin by considering Parkwood's argument that the Board chose the wrong moment in time at which to measure employee support for the Union. "We will set aside the Board's decision only if the Board acted arbitrarily or otherwise erred in applying established law to the facts at issue, or if its findings are not supported by substantial evidence." *Waterbury Hotel Mgmt., LLC v. NLRB*, 314 F.3d 645, 650 (D.C. Cir. 2003) (internal citation and quotation marks omitted). The Board's decision survives this highly deferential standard of review.

The Board determined that Parkwood violated § 8(a)(5) of the NLRA by withdrawing recognition from the Union without proving "actual loss" of majority support, as required by *Levitz Furniture Co. of the Pacific*, 333 N.L.R.B. 717, 717 (2001). *See id.* at 725 ("If the union contests the withdrawal of recognition in an unfair labor practice proceeding, the employer will have to prove by a preponderance of the evidence that the union had, in fact, lost majority support at the time the employer withdrew recognition. If it fails to do so, it will not have rebutted the presumption of majority status, and the withdrawal of recognition will violate Section 8(a)(5)."). In this case of contradictory petitions and counter-petitions, majority support among Parkwood's employees depends on when one measures it. From December 2, 2002 until March 6, 2003, the employees' first petition made clear their lack of support for the Union. But after March 7, 2003, the date the Union presented the counter-petition, the objective evidence showed just the opposite. The Board measured employee support at the expiration of the CBA, on March 8, 2003, because that was the date on which Parkwood's announced withdrawal of recognition was to take effect. *See Parkwood Developmental Ctr., Inc.*, 347 N.L.R.B.

No. 95, slip op. at 2 & n.9 (2006) (noting that March 8, 2003 was the earliest date lawfully to withdraw recognition because, under *Auciello Iron Works, Inc. v. NLRB*, 517 U.S. 781, 786 (1996), "a union enjoys a conclusive presumption of majority status during the life of a collective-bargaining agreement (up to 3 years)").

Parkwood contends that the Board should have measured majority support on December 2, 2002, the date the company announced its intent to withdraw recognition in response to the employees' petition, rather than on March 8, 2003. In support of this proposition, Parkwood makes three related arguments. First, it points to Board decisions suggesting that the earlier date was the proper moment at which to measure support for the Union. Second, it warns that by looking to the later date, the Board has destroyed the previously recognized right of anticipatory withdrawal. Third, it argues that the Board has ignored the so-called "open period." We take the arguments in turn and reject each.

## A.

Prior to *Levitz*, an employer could withdraw recognition from a union on the basis of good-faith doubt as to the union's continued support among a majority of employees in the bargaining unit. *See Levitz*, 333 N.L.R.B. at 717 (citing *Celanese Corp.*, 95 N.L.R.B. 664 (1951)). In applying this rule, the Board measured good-faith doubt at the time the employer announced it. *See, e.g.*, *Bridgestone/Firestone, Inc.*, 331 N.L.R.B. 205, 209 (2000); *Burger Pits, Inc.*, 273 N.L.R.B. 1001, 1002 (1984), *enforced sub nom. Hotel, Motel & Rest. Employees & Bartenders Union Local No. 19 v. NLRB*, 785 F.2d 796 (9th Cir. 1986). Noting that the Board cannot ignore its own precedent, *see Manhattan Ctr. Studios, Inc. v. NLRB*, 452 F.3d 813, 816 (D.C. Cir. 2006), Parkwood

argues that the Board was bound by pre-*Levitz* precedent to measure actual loss of majority support in the same way it once measured good-faith doubt, namely, on the day evidence of actual loss first came to light.

This argument fails to account for *Levitz*, which explicitly overruled *Celanese* and removed good-faith doubt as a sufficient basis for withdrawing recognition from a union. 333 N.L.R.B. at 717. *Levitz* changed *what* the Board measures in scrutinizing a withdrawal of recognition, shifting from good-faith doubt to actual loss of majority support. Implicit in this decision is a corresponding change in *how* the Board will take its measurements. The Board's pre-*Levitz* decisions never addressed the issue presented by the facts in this case, so there was no binding precedent on this point from which it could depart. That the Board was not bound by its precedent to choose the earlier measuring point is apparent from our recent decision in *Highlands Hospital Corp. v. NLRB*, 508 F.3d 28 (D.C. Cir. 2007). In *Highlands*, we approved the Board's decision to consider post-petition employee conduct in determining whether there was an actual loss of majority support. *Id.* at 31–32. We could not have so held if the Board's precedent required it to measure actual loss in the same way it had once measured good-faith doubt.

## B.

Parkwood next contends that the Board's decision dispensed with the right of anticipatory withdrawal recognized in *Abbey Medical/Abbey Rents, Inc.*, 264 N.L.R.B. 969 (1982), *enforced*, 709 F.2d 1514 (Table) (9th Cir. 1983). In *Abbey Medical*, the Board described the employer's power to effect " 'an anticipatory withdrawal of recognition' in relation to a future contract," which allows an employer to honor an existing CBA but question the union's right to

bargain for a new agreement upon its expiration. 264 N.L.R.B. at 969. To withdraw anticipatorily, an employer must "demonstrate that, on the date of withdrawal . . . the union in fact had lost its majority status, or [that the] withdrawal was predicated on a reasonable doubt based on objective considerations of the union's majority status." *Id.* To avoid semantic confusion, anticipatory withdrawal must be distinguished from withdrawal of recognition. Anticipatory withdrawal occurs prior to expiration of a CBA and does not obviate the employer's obligations under the existing agreement. Withdrawal of recognition occurs after expiration of a CBA, at which time the employer is free of contractual obligation.

Parkwood took full advantage of *Abbey Medical*. During the period that began with the employees' petition and ended with their counter-petition, Parkwood lawfully declined to bargain with the Union for a new CBA. *Parkwood Developmental Ctr., Inc.*, 347 N.L.R.B. No. 95, slip op. at 2 n.10 (2006); *cf. Point Blank Body Armor, Inc.*, 312 N.L.R.B. 1097, 1097 n.1 (1993) (holding employer violated the NLRA by negotiating new CBA after employees submitted petition disavowing incumbent union). But nothing in *Abbey Medical* permitted Parkwood to ignore subsequent indicators of majority support in deciding whether to withdraw recognition. The counter-petition made clear that as of March 8, 2003, the expiration date of the CBA and the earliest moment at which Parkwood lawfully could withdraw recognition, the Union had not actually lost majority support. The counter-petition thus restored the presumption of majority support enjoyed by every union during the life of its CBA, up to three years. *See Auciello*, 517 U.S. at 786. The Board's holding to this effect was reasonable and consistent with precedent, so we reject Parkwood's argument that it was arbitrary and capricious.

## C.

Finally, Parkwood argues that the Board ignored the "open period," during which the presumption of majority support for the union is relaxed and the Board accepts election petitions. *See Donald Schriver, Inc. v. NLRB*, 635 F.2d 859, 868 n.10 (D.C. Cir. 1980) ("Under normal 'contract-bar' rules, an election petition for representative status may not be filed during the term of a collective bargaining agreement that has a duration of up to three years . . . except during an open period . . . prior to the expiration date of the contract."). For a health care institution such as Parkwood, this period falls between 120 and 90 days prior to expiration of the CBA. *Trinity Lutheran Hosp.*, 218 N.L.R.B. 199, 199 (1975). Parkwood's December 2, 2002 withdrawal statement fell within the open period, a fact the Board did not discuss in its order. Parkwood argues that the Board's silence on this point rendered its order arbitrary and capricious by giving undue weight to the Union's contractual presumption of majority support. We reject this argument. Neither the employer, nor the employees, nor a rival union filed an election petition, so the open period was irrelevant and the Board was right to ignore it. If Parkwood wanted to secure the benefit of the open period, it should have filed an RM petition during that time. Parkwood cites no authority for the proposition that proof of an actual loss of majority support under *Levitz* is somehow dependent upon the facts as they existed during the open period. The Board might one day make it so, but its decision not to do so in this case was neither arbitrary nor capricious.

## III.

Alternatively, Parkwood argues that, even if the Board did not err in holding it had violated the NLRA by

withdrawing recognition from the Union, the Board, in ordering Parkwood to bargain with the Union, failed to comply with our decision in *Vincent Industrial Plastics, Inc. v. NLRB*, 209 F.3d 727 (D.C. Cir. 2000). In *Vincent Industrial*, we directed the Board to premise every bargaining order on an "explicit[] balanc[ing] [of] three considerations: (1) the employees' Section 7 rights [29 U.S.C. § 157]; (2) whether other purposes of the [NLRA] override the rights of employees to choose their bargaining representatives; and (3) whether alternative remedies are adequate to remedy the violations of the [NLRA]." 209 F.3d at 734. Parkwood accuses the Board of ignoring *Vincent Industrial* and asks us to deny enforcement of the chosen remedy on the basis of this shortcoming.

But we have no jurisdiction to entertain this claim. Our authority to consider Parkwood's petition comes from the jurisdictional grant in § 10 of the NLRA. That portion of the statute limits our jurisdiction as follows: "No objection that has not been urged before the Board . . . shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." 29 U.S.C. § 160(e); *see also id.* § 160(f) (incorporating § 160(e)'s jurisdictional constraint). The General Counsel requested a bargaining order in his exceptions to the ALJ's findings. Parkwood forfeited its challenge to this remedy by failing to respond in its answering brief to the General Counsel's request. To "urge[] before the Board" the arguments it would later have us review, *id.* § 160(e), a party must present those arguments in a procedurally valid way. Parkwood's first opportunity to do so was in its answering brief, but it neglected to discuss remedial issues in that filing. By the time Parkwood objected to the bargaining order in a motion for reconsideration, it was too late. According to its regulations, the Board will only

entertain a motion for reconsideration in "extraordinary circumstances." 29 C.F.R. § 102.48(d)(1). The Board found no such circumstances here, and we must defer to the Board's interpretation of its own regulations because that interpretation is neither plainly erroneous nor inconsistent with the regulations. *Long Island Care at Home, Ltd. v. Coke*, 127 S. Ct. 2339, 2349 (2007) (citing *Auer v. Robbins*, 519 U.S. 452, 461 (1997)); *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945).

Parkwood should have opposed the General Counsel's request for a bargaining order in the answering brief it filed in response to the General Counsel's exceptions. Of course, Parkwood could not have faulted the Board's reasoning in a filing that preceded the Board's order. But Parkwood could have alerted the Board to the possibility that a bargaining order was unwarranted in this instance. Its failure to do so deprives us of jurisdiction to consider the remedial challenge.

**IV.**

We deny Parkwood's petition for review and grant the Board's cross-application to enforce its order.

*So ordered.*