JUDGMENT

This case was considered on the record from the National Labor Relations Board and on the briefs of the parties. It is
ORDERED AND ADJUDGED that the petition for review is denied and the application and cross-application for enforcement are granted.
Prior to admitting its first patients, Elmhurst Care Center (“Elmhurst”), a nursing home facility, executed a collective bargaining agreement with Local 300S, Production Service and Sales District Council (“the Union”), recognizing it as the exclusive representative of all licensed practical nurses, certified nursing assistants, housekeepers, and dietary technicians whom Elmhurst employed. The agreement contained a union security provision, requiring all such employees, both current and future, to pay union dues or face discharge. The central issue before the Board was whether Elmhurst and the Union engaged in unfair labor practices by prematurely executing a bargaining agreement in violation of sections 8(a)(1), (a)(2), and (a)(3) of the National Labor Relations Act, 29 U.S.C. § 158(a)(l)-(3), and 8(b)(1)(A) and (b)(2), 29 U.S.C. § 158(b)(l)-(2), respectively. Cf Int’l Ladies’ Garment Workers’ Union v. NLRB, 366 U.S. 731, 81 S.Ct. 1603, 6 L.Ed.2d 762 (1961) (exclusive recognition of a union without majority support is an unfair labor practice).
Consistent with the Act’s “premise of ... freedom of choice and majority rule in employee selection of representatives,” Garment Workers, 366 U.S. at 738-39, 81 S.Ct. 1603, voluntary recognition of a union is lawful only if, at the time of recognition, the employer (1) employed “a substantial and representative complement of its projected workforce,” and (2) was engaged in its “normal business operations.” Hilton Inn Albany, 270 N.L.R.B. 1364, 1365 (1984). The test is conjunctive: a finding that an employer was not engaged in normal business operations when it recognized a union “would alone establish a violation.” AMA. Leasing, 283 N.L.R.B. 1017,1024 (1987). Finding it “unnecessary to pass on” the administrative law judge’s conclusion that Elmhurst did not employ a representative complement of employees at the time of recognition, the Board instead adopted the judge’s determination that Elmhurst was not then engaged in normal business operations. Elmhurst Care Ctr., 345 N.L.R.B. 1176, 1177 (2005). It therefore concluded that both Elmhurst and the Union engaged in unfair labor practices, deemed the collective bargaining agreement void, and ordered reimbursement of union initiation fees and dues paid *897 after March 19, 1999, in addition to other relief. Id. at 1179,1185-86.
In its petition to this court, Elmhurst argues that it was engaged in normal business operations at the time that it recognized and entered a collective bargaining agreement with the Union and that, in finding otherwise, the Board departed from its precedent holding that a nursing home is in normal business operations before it opens its doors to patients. In any event, Elmhurst further argues, the test for voluntary recognition should consist only of the first of the two elements, which it insists is met here. Although Elmhurst raised this last argument in its petition for reconsideration before the Board, it failed to do so in its original exceptions to the ALJ’s decision applying the two-part test, as the Board found when it deemed the argument waived, see J.A. 197-98, and Elmhurst admits here, see Petr.’s Br. 38. Having failed to exhaust its administrative remedies under the Board’s rules, see 29 C.F.R. § 102.46(g) (“No matter not included in exceptions ... may thereafter be urged before the Board, or in any further proceeding.”), and having shown no “extraordinary circumstances” for this failure, see 29 U.S.C. § 160(e), Elmhurst may not raise this objection now. See Detroit Typographical Union No. 18 v. NLRB, 216 F.3d 109,117 (D.C.Cir.2000). Elmhurst’s apparent contention that this issue first arose in the Board’s opinion is both meritless and contradicted by its other arguments. The ALJ expressly found that Elmhurst engaged in unfair labor practices in part because it was not engaged in normal business operations at the time of recognition. And, Elmhurst now suggests that the ALJ reached its conclusion only on this basis. Petr.’s Reply Br. 6-7. As such, the question whether the “normal business operations” element is a proper part of the analysis certainly arose with the ALJ’s decision.
Substantial evidence supports the Board’s finding that Elmhurst was not engaged in normal business operations at the time it recognized and entered a bargaining agreement with the Union. See 29 U.S.C. § 160(e). The Board relied on the following evidence in reaching this conclusion: (1) Elmhurst was not open to patients on the date of recognition and would not be open to patients for another month; (2) the employees were working “relatively few hours” and their “responsibilities were limited to training and other tasks in preparation for receiving patients”; (3) during this period licensed nurse practitioners and certified nurse assistants “were not performing the principal duties of their positions, ‘hands-on nursing care’ ”; (4) the number of housekeeping and dietary employees remained “more or less stable” after Elmhurst opened to patients, while the number of licensed nurse practitioners and certified nurse assistants increased dramatically (from 17 of 47 employees to 76 of 87 employees); (5) in the two-week pay period in which Elmhurst recognized the Union, 44 of its employees averaged less than 17 work hours each; and (6) a month later, after Elmhurst opened to patients, its employees averaged 51.6 work hours each. Elmhurst Care Ctr., 345 N.L.R.B. at 1177 & n. 10. On the basis of this evidence, the Board concluded that, at the time of recognition, Elmhurst was “involved in preparation for opening of the facility” and “not ... in ‘normal business operations.’ ” Id. “[W]e “will reverse for lack of; 1795; 1795 substantial;1796;1796 evidence only when the record is so compelling that no reasonable factfinder could fail to find to the contrary.’ ” Highlands Hosp. Corp. v. NLRB, 508 F.3d 28, 31 (D.C.Cir.2007) (quoting Palace Sports & Entm’t, Inc. v. NLRB, 411 F.3d 212, 220 *898 (D.C.Cir.2005)). This record is far from that.
The Board’s conclusion is also consistent with its precedent. See A.M.A. Leasing, 283 N.L.R.B. at 1023-24 (finding that meat processing business was not in normal business operations before plant became operational when, although some tasks remained the same, employees’ responsibilities “changed substantially”); Hilton Inn Albany, 270 N.L.R.B. at 1366 (finding that hotel was not in normal business operations before it opened to customers when work was limited to “training” and “preparation” and lacked training on “many vital hotel and restaurant functions”). Moreover, the Board’s conclusion does not depart without explanation from the Board’s precedent in Klein’s Golden Manor, 214 N.L.R.B. 807 (1974), as Elmhurst contends. There, the Board dismissed a complaint charging Klein’s, a “senior citizens’ hotel,” with engaging in unfair labor practices by prematurely recognizing and entering into a collective bargaining agreement with a union. 214 N.L.R.B. at 808-09. About two months before “the start of actual operations,” Klein’s hired kitchen staff, waitresses, housekeepers, porters and maintenance men, representing “virtually all the job classifications [it] required,” and, approximately three weeks before the start of actual operations, Klein’s recognized a union and executed a collective bargaining agreement with it. Id. at 809-10. Finding that a representative complement of employees were employed at the time of recognition and that “although not all of [the employees] performed during the preparatory period the precise duties of the specific job classifications for which they were hired, the work they did ... was in some measure related to the jobs they were to fill,” the Board concluded that Klein’s had not engaged in unfair labor practices. Id. at 815-16.
The Board distinguished Klein’s not only by suggesting that the case did not address the “normal business operations” element — perhaps a less persuasive basis for distinction, which Elmhurst emphasizes — but because in Klein’s, the “‘work in preparation for the opening of the nursing home ... [was] essentially the same as the work after [the employer] opened its doors to patients.’ ” Elmhurst Care Ctr., 345 N.L.R.B. at 1178 (second and third alterations in original) (quoting A.M.A. Leasing, 283 N.L.R.B. at 1024 n. 7). Here, the Board made the exact opposite finding. It found that licensed nurse practitioners and certified nurse assistants — the majority of Elmhurst’s employees after opening and two employee categories apparently not present at Klein’s— “were not performing the principal duties of their positions” at the time of recognition, Elmhurst Care Ctr., 345 N.L.R.B. at 1177, and it found generally that the employees were “not yet performing the duties for which they were employed,” id. at 1178. As a result, the Board’s order is consistent with Klein’s', to the extent Klein’s even addressed the normal business operations prong, it did not hold that a nursing home is necessarily engaged in similar work before and after opening, only that it may be. As discussed above, substantial evidence supports the determination that Elmhurst was not.
Elmhurst attempts two additional and equally non-meritorious arguments. First, Elmhurst argues that the case must be remanded because only a quorum of the Board, and not the full Board, reconsidered the case. It finds support for this proposition only in a 1973 speech by the then — Chairman of the Board to the American Bar Association, where Elmhurst describes the Chairman as stating that “if any NLRB member believes that a case is sufficiently important to receive full *899 NLRB consideration, it automatically does, in the interest of uniformity and out of abundance of judicial caution.” Petr.’s Br. 42-43. Because the general rule is that any group of three or more members may act on behalf of the Board, see 29 C.F.R. § 102.2; 29 U.S.C. § 153(b), and Elmhurst cites no actual authority that requires more, this argument is frivolous. Second, Elmhurst argues that we may not enforce the Board’s order until the Board addresses Elmhurst’s claim that the ordered reimbursement is unduly burdensome. But in its order denying reconsideration, the Board indicated that it would consider this objection during the compliance stage of proceedings, allowing us to enforce the order now. See E.I. Du Pont de Nemours & Co. v. NLRB, 489 F.3d 1310, 1317 (D.C.Cir.2007) (granting enforcement over a claim that the order was unduly burdensome when the Board reserved hearing the objection for the upcoming compliance stage).
We accordingly deny Elmhurst’s petition for review and grant the Board’s cross-application for enforcement against Elmhurst and its application for enforcement against the Union. Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing en banc. See Fed. R.Ajpp. P. 41(b); D.C.Cir. R. 41.