**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 23-1861

NATIONAL LABOR RELATIONS BOARD,

Petitioner,

v.

CONSTELLIS, LLC, d/b/a ACADEMI Training Center, LLC,

Respondent.

No. 23-1925

CONSTELLIS, LLC, d/b/a ACADEMI Training Center, LLC,

Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD,

Respondent.

On Application for Enforcement and Cross-Petition for Review of an Order of the National Labor Relations Board.  (05-CA-278218)

Argued:  September 9, 2025                    Decided:  December 1, 2025

Before AGEE, HEYTENS, and BERNER, Circuit Judges.

Application for enforcement granted, and cross-petition for review denied, by published opinion. Judge Berner wrote the opinion, in which Judge Agee and Judge Heytens joined.

---

**ARGUED:** Jared David Cantor, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for Petitioner/Cross-Respondent. Michael MacHarg, Sr., KAUFMAN DOLOWICH LLP, Los Angeles, California, for Respondent/Cross-Petitioner. **ON BRIEF:** Joshua Counts Cumby, ADAMS AND REESE LLP, Nashville, Tennessee, for Petitioner/Cross-Respondent. Jennifer A. Abruzzo, General Counsel, Peter Sung Ohr, Deputy General Counsel, Ruth E. Burdick, Deputy Associate General Counsel, David Habenstreit, Assistant General Counsel, Milakshmi V. Rajapakse, Supervisory Attorney, Jared D. Cantor, Senior Attorney, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for Respondent/Cross-Petitioner.

---

BERNER, Circuit Judge:

The National Labor Relations Act protects the right of working people to engage in "concerted activities" for the purpose of "mutual aid or protection." 29 U.S.C. § 102. Speaking out against unsafe or unlawful working conditions is one such concerted activity. The National Labor Relations Act also protects workers against employer retaliation for exercising this right. Not all workers enjoy this protection, however. Many are excepted, either by the plain language of the statute or through judicial interpretation. This case concerns the scope of one such exception: that for managerial employees.

Michael Macri worked as a firearms and tactics instructor for Constellis, Inc., a company that trains security officers in the proper handling of weapons. At the outset of the COVID-19 pandemic, Macri voiced concerns about Constellis's lack of workplace precautions. Later that same year, Macri and several of his instructor colleagues raised significant safety concerns, including one involving firing ranges, to their supervisors. The instructors complained that bullets were ricocheting back during shooting exercises, putting instructors and students at grave risk. Indeed, several shooters had already been struck by bullet fragments. After Macri complained, Constellis suspended and later terminated him.

Macri filed a charge with the National Labor Relations Board, alleging that Constellis had unlawfully terminated him in retaliation for exercising his right to engage in protected concerted activity. The Board agreed and ordered Constellis to reinstate Macri and pay him his lost wages. The National Labor Relations Board General Counsel filed this application for enforcement of its order, and Constellis cross-petitioned for review.

3

This case turns on one question: was Macri a managerial employee and thereby excluded from the National Labor Relations Act's protection against retaliation for engaging in protected concerted activity? Because the Board's conclusion that Macri was not a managerial employee was supported by substantial evidence, we grant the Board's application for enforcement and deny Constellis's cross-petition for review.

## I. Background

### A. Factual Background

Constellis is in the business of employing security officers and contracting them out to provide security at various federal government properties. It also trains security officers in the handling of weapons. This case concerns whether Constellis's firearms and tactics instructors in its training programs are properly considered "employees" for purposes of the National Labor Relations Act (NLRA).

Macri and the other instructors taught small groups of students how to handle a variety of weapons. Constellis mandated that instructors adhere to curricula set by management. It also provided "range cards," which detailed the shooting drills that instructors were required to have the students follow. Instructors were not permitted to deviate from or alter the prescribed curricula or drills specified on the range cards without supervisory approval.

Macri and his colleagues were, however, permitted some discretion in carrying out their jobs. They could, for example, remove a student from a live firing situation if they observed a safety violation. The instructors could also file "spot reports" about students

4

who engaged in misconduct. On one occasion, Macri filed a spot report about a student who smelled of alcohol during class. Constellis policy prohibited instructors from otherwise disciplining or removing students from the training program. Such actions could be taken only at the direction of a supervisor. Indeed, Macri was once disciplined for requiring students to do burpees as punishment when they returned to class late following a break.

Macri raised concerns about working conditions at Constellis with his supervisors more than once. During a staff meeting at the start of the COVID-19 pandemic, Macri questioned Constellis's prohibition on instructors and students wearing personal protective equipment at work. Shortly thereafter, a supervisor formally documented an unrelated workplace infraction allegedly committed by Macri months earlier.

Several months later, Macri—together with other instructors—sent a letter to Constellis management voicing their objection to a problem at the firing ranges that caused bullets to ricochet back toward shooters. The letter stated that the ricochet problem posed "a serious but correctable life hazard to both students and instructors," warned that it could lead to "injury or death," and requested that Constellis fix this safety problem immediately. J.A. 730.[1] In response to the instructors' letter, Constellis temporarily closed the most dangerous range and later claimed to have fixed the problem.

The ricochet problem persisted. During a meeting with his supervisors, Macri confronted them about the company's failure to correct the issue. He raised his voice and

---

[1] Citations to J.A. refer to the Joint Appendix filed by the parties.

yelled at a supervisor. After this meeting, Constellis suspended Macri and later fired him, allegedly for insubordination.

## B. Procedural History

Macri filed a charge with the NLRB Regional Director in Maryland alleging that he had been terminated unlawfully in retaliation for speaking out about unsafe working conditions at Constellis. After investigating Macri's claim and finding it meritorious, the Regional Director filed a complaint against Constellis for violating NLRA Section 8(a)(1), which forbids employers from interfering with, restraining, or coercing employees for engaging in concerted activities for mutual aid or protection. 29 U.S.C. §§ 157, 158(a)(1).

Constellis contested the allegations. Although it conceded that Macri had repeatedly complained about unsafe working conditions, Constellis maintained that Macri had been fired because of alleged insubordination, not in retaliation for his concerted activity. Constellis also argued that Macri was a "managerial employee" and thereby excepted from the NLRA's protections.

Following a hearing, an NLRB administrative law judge (ALJ) concluded that Macri was not a managerial employee and was, therefore, entitled to the full protection of the NLRA. The ALJ further found that Constellis suspended and terminated Macri, in large part, because he had raised concerns about Constellis's approach to personal protective equipment at the start of the COVID-19 pandemic and the ongoing ricochet problem in the

6

firing ranges.[2] Thus, the ALJ ruled that Constellis had committed unfair labor practices in violation of the NLRA.

Constellis appealed the ALJ's decision to the National Labor Relations Board (the Board), which affirmed and adopted the decision with only minor modifications. Before us is the NLRB General Counsel's application for enforcement of the Board's order and Constellis's cross-petition for review, challenging the Board's finding that Macri was not a managerial employee.[3]

## II. Analysis

This court treats the Board's findings of fact as conclusive if they are "supported by substantial evidence on the record considered as a whole." 29 U.S.C. § 160(f). The same substantial evidence standard applies to our review of the Board's resolution of mixed questions of law and fact, including a determination of whether an employee is properly considered a managerial employee for purposes of the NLRA. *NLRB v. HQM of Bayside, LLC*, 518 F.3d 256, 260 (4th Cir. 2008). Substantial evidence "means—and means only—

---

[2] To establish a violation of Section 8(a)(1), the NLRB General Counsel need only show that an employee's protected activity "was a substantial or motivating factor for the employer's action." *RGC (USA) Mineral Sands, Inc. v. NLRB*, 281 F.3d 442, 448 (4th Cir. 2002); *see also Wright Line*, 251 N.L.R.B. 1083 (1980). Retaliation need not be the only motive for the employer's actions. *See RGC (USA) Mineral Sands, Inc.*, 281 F.3d at 448.

[3] An order of the National Labor Relations Board does not have the force of law until it is enforced by a federal Circuit Court of Appeals. 29 U.S.C. § 160(e); *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 48 (1938) (explaining that "[n]o power to enforce an order is conferred upon the Board" and "[t]o secure enforcement, the [NLRB General Counsel] must apply to a Circuit Court of Appeals for [an order's] affirmance").

'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

## A. The Managerial Exception

The NLRA protects "any employee" unless the employee is specifically excepted. 29 U.S.C. § 152(3). The Supreme Court created one such exception in *NLRB v. Bell Aerospace Co. Division of Textron* for "managerial employees" who "formulate and effectuate management policies by expressing and making operative the decisions of their employer." 416 U.S. 267, 288 (1974) (quotation marks omitted). Noting that the NLRA did not explicitly detail this exception, the Supreme Court nonetheless reasoned that Congress regarded managerial employees as "so clearly outside the [NLRA] that no specific exclusionary provision was thought necessary." *Id.* at 283.

This is the first time our circuit has been called upon to construe the managerial exception. We agree with our sister circuits that the managerial exception must be construed narrowly given the NLRA's otherwise broad definitional language. *See Univ. S. Cal. v. NLRB*, 918 F.3d 126, 140 (D.C. Cir. 2019) (acknowledging the need "to avoid interpreting the managerial exception so broadly that it chips away at the NLRA's protections"); *David Wolcott Kendall Mem. Sch. v. NLRB*, 866 F.2d 157, 160 (6th Cir. 1989) ("[T]he exception must be narrowly construed to avoid conflict with the broad language of the [NLRA] which covers 'any employee,' including professional employees."); *see also Holly Farms Corp. v. NLRB*, 517 U.S. 392, 399 (1996) (noting "reviewing courts must take care to assure that exemptions from NLRA coverage are not

8

so expansively interpreted as to deny protection to workers the [NLRA] was designed to reach"); *Entergy Gulf States, Inc. v. NLRB*, 253 F.3d 203, 208 (5th Cir. 2001) (explaining the supervisor exception to employee status under the NLRA "is not construed broadly" so as not to cause employees to "lose rights which the [NLRA] seeks to protect"). In assessing whether an employee is managerial, the proper focus is on the employee's "actual job responsibilities, authority, and relationship to management." *Bell Aerospace*, 416 U.S. at 290 n.19.

"[E]mployees whose decisionmaking is limited to the routine discharge of professional duties in projects to which they have been assigned" are not deemed managerial. *NLRB v. Yeshiva Univ.*, 444 U.S. 672, 690 (1980). Such employees' responsibilities fall within "the scope of the duties routinely performed by [those] similarly situated[.]" *Id.* Even employees with substantial expertise, responsibility for planning, or authority to direct and evaluate other employees are not automatically considered managerial. *Id.* at 690 n.30.

Put plainly, we must determine whether the employee's responsibilities are so aligned with management that the employee "represents management interests by taking or recommending discretionary actions that effectively control or implement employer policy." *Id.* at 683.

### B. Review of the Decision of the Board

The Board's conclusion that Macri was not a managerial employee is supported by substantial evidence. As a threshold matter, the Board articulated the correct legal standard as established by the Supreme Court. The Board then properly applied that standard to find

9

that Macri's position as an instructor lacks sufficient indicia of managerial status to fall under the exception: Constellis instructors are not permitted to formulate or effectuate management policies; they have no ability to alter the curriculum they teach; they play no role in selecting students for training; they are not allowed to independently discipline students; and they cannot make the ultimate decision regarding whether a student is permitted to remain in the training program. The authority to remove a student from class temporarily because of a safety violation does not evidence the level of discretion characteristic of managerial employees. Such authority is more akin to that of non-managerial classroom teachers who can remove students from class to control the safety conditions in their classrooms but cannot suspend or expel students without the involvement of higher-level decisionmakers. The authority to remove a student temporarily is particularly important in the context of weapons training, where students and instructors face substantial dangers that require immediate intervention.

The actions taken by Macri in response to his concerns about workplace safety demonstrate the importance of the NLRA's protection of those engaging in concerted activity. Macri and his coworkers lacked the ability or authority to fix the ricochet problem at the firing ranges. Instead, they had to bring their safety concerns to the attention of those at Constellis with the power to address the issues.

We can quickly dispense with Constellis's remaining arguments. The Board did not err by referring to and relying on its decision in *Wolf Creek Nuclear Operating Corp.*, 349 N.L.R.B. 686, 693 (2006). That decision provides a useful analysis of managerial status in

10

a similar setting. Nor is there support for Constellis's assertion that the ALJ engaged in results-oriented decision-making.

## III. Conclusion

For these reasons, we grant the Board's application for enforcement and deny Constellis's cross-petition for review.

*GRANTING APPLICATION FOR ENFORCEMENT AND*

*DENYING CROSS-PETITION FOR REVIEW*

11